LAKEWOOD HOMES, INC., APPELLANT, v. BOARD OF ADJUSTMENT OF CITY OF LIMA ET AL., APPELLEES.

126

(No. 1421—Decided March 3, 1971.)

*Mr. Walter M. Lawson, Jr.,* and *Mr. Anthony J. Bowers,* for appellant.

*Mr. Oren E. Dickason,* for appellees.

COLE, J.   Lakewood Homes, Inc., an Ohio corporation, is the owner of a contract right to acquire some 13 acres of land in the city of Lima, Ohio, and has proposed to so acquire it for the construction of an apartment complex upon it. The land is subject to the zoning ordinances of the city of Lima, a charter city, and was zoned Class II Business, which includes the use for residential apartments. No issue is here made as to the actual ownership of the land and under the appropriate sections of the Lima ordinances an owner of land or agent of the owner may apply for a building permit, which is the central objective of the proceedings here involved. At some point prior to the application for a building permit Lakewood Homes, Inc., was informed by agents of the city that it would be necessary for it to file and have approved a "Development Plan" under Section 1303.01, Codified Ordinances of Lima, Ohio, which reads as follows:

"The owner of any tract of land shall submit to the City Planning Commission a plan for the use and development of such tract of land primarily for residential pur-

poses and if such development plan is approved after public notice and hearing by the City Planning Commission and by the City Council, the application of use, height, area and yard regulations established herein shall be modified as required by such development plan, provided that for the tract as a whole excluding street area, but including area to be devoted to parks, parkways or other permanent open spaces, there will not be less than the required area per family for the area district in which such tract of land is located for each family which under such development plan may be housed on such street. And provided further that under such development plan the appropriate use of property adjacent to the area included in such development plan is fully safeguarded.''

The Planning Commission, after hearing, disapproved the plan submitted on June 26, 1968, and the matter was never brought before City Council.

Subsequently, on July 11, 1968, Lakewood Homes, Inc., applied for a building permit pursuant to Section 104.21 of the Building Code of the City, which provides as follows.

''If the building inspector is satisfied that the work described on the application for permit and the plan filed therewith conform to the requirements of this Code *and other pertinent laws and ordinances*, he shall issue a permit therefor to the applicant.''

The Inspector of Buildings is now called the Building and Zoning Supervisor and is also the chief administrative agent of the Lima Zoning Ordinances (Section 1313.01). In effect he therefore considers compliance with both zoning and building codes when making the determination whether to issue a permit pursuant to the foregoing authority since zoning laws and ordinances must be ''other pertinent laws and ordinances.''

In Section 100.5, Building Code of Lima, it is provided specifically that ''no building permit shall be issued for any construction in violation of any provision of the Planning and Zoning Code of the City.''

The Supervisor pursuant to this authority refused to

issue such a permit in a letter dated July 23, 1968, which reads in full as follows.

"This letter is to inform you that a building permit to construct an apartment complex at 409 Brower Road, Lima, Ohio, is denied.

"Basis for this decision are the following items:

"1. The development plan has not been approved by the City Planning Commission and City Council. (Sec. 1303.01, C. O. L.)

2. Every dwelling shall face on a public street. (Sec. 1335.01. subsection (i), C. O. L.)

"3. A buffer screening area has not been provided. (Sec. 1321.03, C. O. L.)

"4. The floor area of units 4A in building Number 7 on the second floor exceeds the allowable maximum for buildings of V.-A construction. (Sec. BB-53-07, O. B. C.)

"5. A second exit is required from units 4A in building Number 7. (Sec. BB-53-12 O. B. C.)

"6. The lot shall be graded to prevent the drainage of surface water onto adjacent property, plus proper drainage shall be provided along Brower Road."

Of the six assigned reasons No. 6 constitutes a condition and not a ground for refusal of the permit. The appellant, Lakewood Homes, Inc., indicated during the various hearings involved its willingness to comply with this condition. Basis No. 5 and Basis No. 4 are directed to compliance with the Building Code, and the Building Appeals Board is given jurisdiction to hear appeals on such matters under Section 104.43 of the Building Code of Lima, Ohio. Such an appeal was not here involved, and as to these two grounds for refusal of the permit no issue arises in the present case.

On the other hand, items 1, 2 and 3 deal with the application of Zoning Ordinances. By Section 1315.01, et seq., a Board of Adjustment is created, and in Section 1315.02 of the Zoning Ordinances it is said:

"Such Board of Adjustment shall hear and decide appeals from and review any order, requirement, decision or determination made by the Inspector of Buildings *in*

*the administration of this Zoning Code.* It shall also hear and decide all matters referred to it, or upon which it is required to pass *under this Zoning Code."*

In 100.5 Building Code of the City of Lima it is further specifically provided:

"An appeal shall lie to the Board of Adjustment provided for in Chapter 15 of the Planning and Zoning code of the City from the decision of the Inspector of Buildings upon the denial of a building permit due to a violation of the provisions of such Planning and Zoning Code."

Therefore the Board of Adjustment had exclusive jurisdiction of an appeal from a denial of permit by reason of items 1, 2 and 3 but no jurisdiction of an appeal from a denial of permit by reason of items 4 and 5. Likewise the Building Appeals Board had jurisdiction to hear an appeal from a refusal of a permit on grounds 4 and 5 but no such jurisdiction as to grounds 1, 2 and 3 since it has authority to reverse or modify only where the Building Code is concerned. (Section 104.42 (g) Building Code of the City of Lima.)

Because of this peculiar dichotomy in appellate procedure, the action later taken by Lakewood Homes, Inc., served only to appeal the denial of a permit on grounds 1, 2 and 3. It appealed to the Board of Adjustment where several hearings transpired. During the course of these hearings the issue narrowed to the reason set forth in basis 1.

Item 2 was eliminated by a consideration of the definition of "dwelling" under the Zoning Code, from which it became apparent that the requirement as to facing a public street applied only to buildings to be occupied by not more than four families (any number of individuals living together as a single housekeeping unit, hence one person if composing a single housekeeping unit). Since each of the 12 apartment buildings for which application was made had within a minimum of 16 apartment units, the buildings were not dwellings and the requirement did not apply.

Lakewood Homes, Inc., through its counsel, both at

these hearings and at subsequent steps in the procedure of appeal, has promised full compliance with ground 2 pertaining to buffer zones and has rendered this issue for purposes of the present appeal moot. It no longer may be said to be a ground for refusal of the permit but may constitute a condition of a permit. In the notice of appeal to the Board of Adjustment, appellant, Lakewood Homes, Inc., states:

"Applicant stands ready to comply with all buffer screening area provision of the City Code and requests that said building permit issue on condition that such buffer screening area is provided."

This being the case we consider this issue eliminated.

The appeal filed with the Board of Adjustment also by amendment requested a variance from the provision of the Code pertaining to development plans, but after hearing its request it was denied at a meeting of the Board of Adjustment on August 14, 1968, for two reasons contained in the motion—

a. That the Board of Adjustment had no authority to determine the City Planning Commission was in error, and

b. That the building and zoning supervisor did not err in refusing to grant a permit.

The motion was adopted.

Therefore the appeal from the action of the Building and Zoning Supervisor was denied by oral vote. However, minutes were later prepared by the secretary of the Board and at a meeting of the Board on August 28th were approved and subsequently signed. A notice of appeal to the Court of Common Pleas under R. C. 2506.01, dealing with appeals from administrative agencies, was filed on September 5, 1968, with the Board of Adjustment.

The Court of Common Pleas heard testimony in addition to the transcript and ultimately reversed the decision of the Board of Adjustment. In addition, however, it held that the action of the Board was illegal, because it "was based only upon superficially plausible reasons lacking the equity required by (1) general equitable principles

and (2) the prohibitions against deprivation of rights provided by Title 42, U. S. C. A. Section 1983 (R. S. 1979, Act. Apr. 20, 1879, C. 22, 1.17 Stat. 13)."

The case was remanded to the "Commission," presumably the Planning Commission, to take certain action pertaining to its action on the development plan consistent with the findings of the Court, and retained jurisdiction until further notice.

From this judgment of the Common Pleas Court appeals were duly taken to this Court by all parties and are now before us for consideration.

I. Before proceeding to the appeals as they pertain to the substantive issues here involved, a procedural issue is raised. Both the intervening landowners and the City in their assignments of error contend that the notice of appeal of Lakewood Homes, Inc., from the decision of the Board of Adjustment was not timely filed and that the Common Pleas Court therefore failed to acquire jurisdiction of the appeal. It is strenuously urged that the action of the Board was on August 14, 1968, that this was in fact the decision and was completed when the roll call vote was taken and the vote rejecting the appeal announced. It is contended that the time for such an appeal is ten days and that September 5, 1968, was more than ten days from August 14, 1968, and hence the appeal was not timely filed.

The pertinent section of R. C. 2505.07 governing the time for filing an appeal under R. C. 2506.01 reads as follows:

"After the journal entry of a final order * * * or *after the entry of other matter for review* the period of time within which the appeal shall be perfected * * * is as follows:

"(B) All other appeals shall be perfected within ten days."

The statute is explicit in its reference to "entry of other matter" for review. That there be a permanent, written record of some nature is implicit and inherent in the use of the word "entry." In Webster's Third International Dictionary this term, as here utilized, is defined as:

"5a. The act of making or entering a record * * * b. something that is entered: as (1) a record or notation of a particular day's occurrences of some transaction or proceedings * * * ."

The description of the Board of Adjustment's procedures as described by its secretary who testified in the Court of Common Pleas indicates that there is no actual immediate record made at the time of the hearing. Some informal notes or perhaps tape recordings are made for the use of the secretary in preparing, at a later date, the minutes. Such a record is then prepared by the secretary but subject to the approval of the Board and signature by the president or by an officer designated by the Board to so sign. (In fact the minutes here were signed by a chairman pro tem.) And it is only after approval and signature that a record of activities has been permanently made and entered on the books of the Board.

In the instant case, the minutes of the Board for the meeting of August 14, 1968 were made by the secretary and presented for approval on August 28, 1968 (B/E 156). It is apparent they were approved and then signed by the chairman pro tem (B/E 150). In the period intervening between August 14th and August 28th these minutes were prepared but were not a part of the permanent records of the Board. This they became only after approval and signature.

Therefore the "entry" of the matter for review was made at the earliest on August 28, 1968. (It is not quite clear when the signing took place, but it was after approval.) The notice of appeal filed on September 6, 1968, was within the ten day statutory period and was timely filed.

The assignments of error predicated on this ground are not well taken. See also *Grimes* v. *Cleveland,* 17 Ohio Misc. 193; *Sun Oil Co.* v. *Board,* 9 Ohio Misc. 101.

II. The other assignments of error are generally directed to the action of the Court of Common Pleas in its special remand and to the issue as to whether or not the action of the Board of Adjustment in affirming the denial of a permit was correct. Subordinate issues as to

constitutionality and illegality of the previous action of the City Planning Commission are raised. However, in the view we take here many of these questions are not pertinent to the present appeal, and we therefore turn to the direct and primary issue involved. Was the Board in affirming the denial of the permit correct? And as we have heretofore seen, the issue narrowed down to ground or basis No. 1 of the letter of July 23, 1968, heretofore quoted. This narrow issue poses the question which faced the Board of Adjustment.

Was the disapproval of the Planning Commission of a development plan submitted under Section 1303.01 Lima Zoning and Planning Ordinances a valid and sufficient ground for the refusal of a building permit in the instant case?

If the answer to this question is in the negative, then the action of the Board was unreasonable and arbitrary.

If the answer is in the affirmative, then its decision is reasonable and based on a sound basis.

We should first note that this issue in our opinion does not involve the question as to the validity, constitutionality, or legality of the action by *the Planning Commission.* That action was taken on June 26, 1968. No appeal of any kind was taken or could be taken under our view of this procedure. Therefore as to this development plan the action is final and not subject to indirect attack or an indirect appeal to the Board of Adjustment. There is no provision for any such appeal; and the action of the Planning Commission is final and binding on the Supervisor of Building & Zoning *if the approval of a development plan is a valid prerequisite to the issuance of a building permit.*

However, the question remains as to whether the approval of such a plan is a valid precondition under the Lima ordinances to the issuance of such a permit. This brings us to an analysis in detail of Section 1303.01 which was quoted in full at the beginning of this opinion.

It is our opinion that this section imposes no *requirement* that a development plan be approved prior to the building of any structure. Rather it presents a *method*

whereby complex and specialized changes may be made by action of Council to permit the use of land in ways otherwise prohibited by the existing zoning ordinances. It is in short an opportunity for change; not a barrier to building. The barrier to building, if there be any, lies in the existing prohibitions of the zoning code. If they would forbid the development of an area, and the developer desires to proceed anyway in accordance with a special plan and both the Commission and Council approve that plan, then the existing zoning code is amended to provide *as to this area* the required changes. If, however, the proposed structure or structures require no zoning changes and in fact comply with all existing zoning requirements, there is no need for change. The opportunity for change is there, but the necessity for change is not. Therefore the method of change provided by Section 1303.01 is not pertinent.

Such a provision actually provides for a special form of legislative area zoning. (See *Willott* v. *Beechwood,* 175 Ohio St. 557, where the issue of spot zoning was distinguished on the basis of the size of the area (80 acres).) As to a specific tract, the various requirements of the zoning code, perhaps and probably in numerous ways, are changed but only in accordance with an overall plan which both the Planning Commission and the Council must approve to preserve the integrity of the zoning concept. It thus introduces a mode of flexibility over and beyond the somewhat limited administrative variance concept. It is, we decide, a permissible procedure, not a required procedure; and its use is only pertinent where changes or modifications of existing zoning limitations are required.

This interpretation is evident from several differing approaches:

1. The internal wording of the ordinance is wholly inconsistent with the interpretation that a development plan is a requirement in all instances. It is apparently applicable to any owner of a "tract" of land. Tract is not defined in the Zoning Code, but in Webster's Third New International Dictionary it is defined as "an area either large or small: as a (1) a region or stretch (as of land)

that is usu. indefinitely described or without precise boundaries * * *: a precisely defined or definable area of land (an 80 acre tract) * * *."

Thus, unless precisely, internally described, a tract is an indefinite area either large or small. Here there is no precision as to description or limitation as to extent and the statute applies to any owner of land no matter what its size in the zoning area. But if this be the case, to consider the section as imposing a requirement leads to an absurdity. It would mean that every owner of a 50 foot lot would, before building, have to submit a special plan and get special approval *even though* he complied in all respects with the zoning code. However, if we consider this as a mode to achieve specialized changes in that code, a door, as it were, to council action, then no absurdity results. The ordinance is limited by its very nature to be applicable to only those owners of tracts, large or small, who need its operation to achieve change.

2. Again internally we find no provision for a negative result. The only result of the ordinance is the positive one. "The application of use, height, area and yard regulation established herein shall be modified as required by such development plan * * *." Obviously this is the purpose of the ordinance since this is all it affirmatively accomplishes. It changes the existing zoning code in a special way contained in a plan.

But what happens if the plan is not approved. The only thing that can happen under this wording is that the changes are not made—i. e., the existing zoning code remains in full and unvaried operation. But does this then require that one who already complies with the existing zoning code without change must file a plan and obtain approval under a procedure whose sole stated objective is change which is not needed. Again we arrive at an absurd result.

But if this be interpreted as a special mode of procedure to achieve coordinated complex change and to give the general zoning ordinance flexibility where needed, then the absurdity disappears.

3. It would also appear that the ultimate action contemplated by the statute is legislative in character. Normally in zoning ordinances and here, as in Section 1305.01 providing for change in zoning districts (a comparatively simple change as compared with the complex and coordinated changes required or contemplated by Section 1303.01), change requires reference to and action by the Planning Commission as the general coordinating specialist prior to legislative action. In Section 1303.01 such a route is established; the matter goes to the Planning Commission prior to action by Council.

In *Donnelly* v. *Fairview Park,* 13 Ohio St. 2d 1, it is said:

"If, then, the action of a legislative body creates a law, that action is legislative, but if the action of that body consists of executing an existing law, the action is administrative."

Under Section 1303.01 the actual and ultimate action is an amendment to the existing zoning code. The wording provides for changes not only in use districts but in height, area and yard regulations. This is a far different thing than granting a variance in a hardship case and to prevent unconstitutional operation of the general zoning law. This is not administrative but legislative, providing opportunity for the broadest revisions of existing regulations. If we interpret it as being simply administrative, it becomes superfluous, for that kind of administrative change is already provided for in other sections of the Code. This is, to be meaningful, something more and by its wording it covers much more. So much more than any phrase less than an exercise of the legislative function would be improper.

But if this be the case and a legislative act is contemplated as the ultimate goal of the section it can only be interpreted as establishing a procedure, not a requirement. To contend that every owner, even of a large area, *must* seek legislative action even though he can fully comply with existing zoning requirements is an absurdity.

But if this be merely an avenue to change to be used when needed, the ordinance is not absurd.

The section also contains only a sketchy standard for administrative action, and if it is interpreted as providing an administrative remedy, serious problems of an unconstitutional delegation of legislative authority arise. However, if this be considered essentially a legislative procedure to be used only where change in the preexisting ordinance is required, no detailed standards are required as the ultimate action is, in any event, legislation by the legislative body.

It is the duty of the court to construe the acts of legislative bodies so as to avoid unreasonable, absurd, or ridiculous consequences. See 50 Ohio Jurisprudence 2d 223, Statutes, Section 228, and cases therein cited. In *Ohio* v. *Nickles*, 159 Ohio St. 353, the first paragraph of the syllabus reads:

"In determining the intention of the General Assembly as to the meaning and operation of statutes, a court, if possible, should avoid absurd and grotesque results."

See *Aciero* v. *General Fireproofing*, 166 Ohio St. 538.

Similar considerations and principles must guide the interpretations of the acts of lesser legislative bodies. Here, in numerous ways, if this ordinance (Section 1303.01) be interpreted as a mandatory requirement, absurd and grotesque conclusions result. If it be interpreted as simply providing a permissive and possible method for adopting the zoning code to special requirements, one among several methods of change, providing an opportunity but not a mandate, then a sensible and useful result occurs. It should be noted that the word "shall" may be interpreted as being permissive and can be interpreted to mean "may." *State, ex rel. Smith,* v. *Barnell,* 109 Ohio St. 246. Here the whole context demands a permissive interpretation.

However, we should also note that even if the filing of such a plan is mandatory, Lakewood Homes, Inc., did so file. The issue here is the necessity for approval.

If then the provisions of Section 1303.01 impose no requirements but provide a permissive mode of change, then it logically follows the section does not provide a valid reason for refusing a building permit. If the pro-

posed structure violates a requirement of the zoning code, then that violation is the proper ground for refusal. Perhaps the violation may be eliminated by use of Section 1303.01, but approval under that Section of a Development Plan is not in itself a zoning requirement. If there is no violation of any of the zoning requirements and no changes in the code are needed to eliminate violations, then the failure to obtain approval of a development plan is not a valid ground for refusal of a permit.

This being the case, it becomes immaterial if Section 1303.01 (as enforced) is illegal under the Federal laws as to civil rights. It becomes immaterial whether it be constitutional or not. The action of the Planning Commission is simply not relevant to the present problem. If the proposed structure violated the use, height, area or yard regulations, then that violation could be a valid ground for refusal of a permit. But none were here cited except grounds 2 and 3 which have been eliminated as issues herein. The failure of the Lakewood Homes, Inc., to obtain approval of a development plan is not pertinent and not a valid ground for refusal of a permit.

Hence the action of the Board of Adjustment in denying the appeal of Lakewood Homes, Inc. from the denial of a permit by the Supervisor of Building and Zoning should be reversed since all three grounds for refusal, appealable to that Board have been determined to be invalid or moot. The action of that Board was therefore illegal, arbitrary and unreasonable. This conforms to the judgment of reversal of the Court of Common Pleas but not to the reasons for that judgment, and to this extent the judgment of that Court is affirmed.

However, it is our judgment that the matter of granting the permit in so far as matters appealable to the Board of Adjustment is concerned have been fully determined and all of grounds 1, 2 and 3 eliminated as valid grounds for the refusal of a building permit. Grounds 4 and 5 still remain, however, and therefore it is our judgment that the matter of granting a building permit be remanded to the Board of Adjustment, the body appealed from, with instruc-

tions to enter an order consistent with the findings and opinions of this Court, it being our specific finding that Section 1303.01 of the Zoning Code of Lima, Ohio is not a substantive requirement of the Zoning Code for a building permit but a legislative procedural method to obtain rezoning. As such, the failure to utilize it does not constitute, standing alone, a valid reason for the refusal of a building permit.

The judgment of the trial court remanding this matter to the Planning Commission for action consistent with its opinion and decision is reversed for the reasons herein set forth, as is the judgment of the Common Pleas Court to retain continuing jurisdiction.

Dealing specifically with the errors assigned by Lakewood Homes, Inc., we find the following.

As to errors 1 and 2 we determine that the constitutionality of Section 1303.01, Lima City Ordinances is not material to the present controversy and a determination of constitutionality is not required.

As to the assignment of errors by Edward F. Rettig and others we find that:

1. The appeal to the Common Pleas Court was timely filed, and the assignment of error is not well taken;

2. The court did not commit error in not affirming the decision of the Board of Adjustments for the reason set forth in the foregoing opinion;

3. The court did not err in reversing the decision of the Board of Adjustments but did err in remanding the cause to the Planning Commission and retaining jurisdiction; and

4. This error as to the decision of the court below being contrary to law is in part correct and in part not well taken as set forth in the foregoing opinion.

As to the assignments of error of the City of Lima, et al., we find that:

1. The court did not err in overruling the motion to dismiss for the reason that the appeal was not timely filed as set forth herein, and the assignment of error is not well taken;

2. The trial court did not err in not affirming the decision of the Board of Adjustments, and the assignment of error is not well taken;

3. The trial court did err in remanding this cause to the City Planning Commission and retaining jurisdiction; and

4. Whether or not the court was in error in making independent research in attempting to take judicial notice of evidentiary matters not before the court is immaterial as all such research was directed to the issue of the illegality of the action of the Planning Commission and this action we find immaterial to the present controversy.

*Judgment in part reversed and in part modified and affirmed.*

YOUNGER, P. J., and GUERNSEY, J., concur.