**LIBERTY SAVINGS BANK, Appellee,**

v.

**KETTERING, Appellant.**

[Cite as *Liberty Sav. Bank v. Kettering* (1995), 101 Ohio App.3d 446.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14652.

Decided Feb. 22, 1995.

*Bieser, Greer & Landis* and *Irving G. Bieser, Jr.,* for appellee.

*Altick & Corwin, Robert N. Farquhar* and *Donald K. Scott,* for appellant.

BROGAN, Judge.

The city of Kettering appeals from the judgment of the Montgomery County Court of Common Pleas which reversed a Kettering City Council resolution denying Liberty Savings Bank ("LSB"), appellee, a permit or variance to erect an on-premises sign.

In 1992, LSB leased a building at 550 East Stroop Road in Kettering. The building is located within a planned commercial unit development ("PUD") known as the "Eichelberger Shopping Center." However, the structure is a single-occupancy building, situated on an outlot separate from the shopping center.

LSB applied to the city for a permit to erect a freestanding, ground-mounted sign with its logo on the premises. Over the city's objection, a hearing examiner granted the permit. After the examiner affirmed his decision upon the city's request for a rehearing, the city appealed to its planning commission. The commission reversed the examiner's determination, and further denied LSB's application for a variance. Upon LSB's appeal of the commission's action to the Kettering City Council, council upheld the commission's decision.

LSB appealed the decision to the Montgomery County Court of Common Pleas, pursuant to R.C. Chapters 2505 and 2506, "on questions of law and fact." LSB

subsequently filed a complaint challenging the council's resolution as being counter to the city's zoning code and contrary to evidence which, LSB claimed, proved it qualified for a variance. LSB admits that it did not file a supersedeas bond at the time of its appeal.

The city moved to dismiss LSB's appeal. The city claimed, *inter alia*, that the court lacked jurisdiction to hear the case because LSB had failed to file a bond. The court denied the motion. It concluded that a supersedeas bond is not required when an administrative appeal arises solely upon a question of law. The court determined that it would review the case only upon a question of law, although LSB had denominated it otherwise. Hence, the court permitted the case to proceed on its merits.

The court ultimately reversed the council's action. It held that, although the zoning code would prohibit the proposed sign to tenants of a multitenant building within a PUD, since LSB is the sole lessee of a single-occupancy building, the code permits the requested sign. Because the court reversed on this issue, it did not address the variance claim. Therefore, the court treated LSB's appeal as being solely upon a question of law. The city's timely appeal followed.

The city advances two assignments of error, which we will address in inverse order:

"II. The common pleas court erred in deciding that the supersedeas bond required by Ohio Revised Code Section 2505.06 for appeals on questions of law and fact was not required."

Because this assignment concerns the threshold matter of jurisdiction, we consider it at the outset.

The city argues that the lower court did not have jurisdiction to consider this case for want of LSB's supersedeas bond. It claims that since LSB designated its appeal as one of both law and fact, and because LSB's complaint alleged that the bank was entitled to a variance based on the evidence, the failure to file a bond was fatal to LSB's appeal. LSB counters that, notwithstanding the variance question, its "first and primary issue"—whether the zoning code permits the requested sign—was "purely a question of law." In the alternative, LSB submits that even if a bond was required, the appropriate remedy is not dismissal of the cause.

Appeals of administrative decisions to Ohio courts are governed by R.C. Chapters 2505 and 2506. Appellants perfect these appeals by filing written notices of appeal with the administrative body and the reviewing court. R.C. 2505.04. Two types of appeal are available at the appellant's discretion:

"The notice of appeal * * * shall designate, in the case of an administrative-related appeal, the final order appealed from and whether the appeal is on

questions of law or questions of law and fact. * * * In the case of an administrative-related appeal, the failure to designate the type of hearing upon appeal is not jurisdictional, and the notice of appeal may be amended with the approval of the appellate court for good cause shown." R.C. 2505.05.

For appeals on questions of law and fact, the code provides:

"[N]o administrative-related appeal shall be effective *as an appeal upon questions of law and fact* until the final order appealed is superseded by a bond in the amount and with the conditions provided in sections 2505.09 and 2505.14 of the Revised Code, and unless such bond is filed at the time the notice of appeal is required to be filed." (Emphasis added.) R.C. 2505.06.

■ Where an administrative appeal is brought solely on questions of law, the appellant is not required to file a bond. *Am. Aggregates Corp. v. Concord Twp.* (Apr. 11, 1991), Delaware App. Nos. 90–CA–32 and 90–CA–33, unreported, 1991 WL 57189; *Adrian, Inc. v. Parrott* (Nov. 30, 1990), Delaware App. No. 90–CA–31, unreported, 1990 WL 200315.

Ohio courts of appeals have disagreed on the consequences of an appellant's failure to file the required bond upon an appeal of questions of law and fact. Some courts view the failure as fatal to the entire appeal. *E.g., Ballado v. Cleveland Hts.* (1991), 76 Ohio App.3d 497, 602 N.E.2d 394; *Dawes v. Murphy* (1963), 119 Ohio App. 201, 26 O.O.2d 449, 197 N.E.2d 818; *Landsittel v. Delaware* (June 29, 1989), Delaware App. No. 89–CA–2, unreported, 1989 WL 75843. Other appellate panels have held that, without bond, the appeals may continue only upon questions of law. *E.g., Pickrel v. Hrobon* (1958), 106 Ohio App. 313, 7 O.O.2d 69, 154 N.E.2d 755; *Nutter v. Concord Twp. Bd. of Zoning Appeals* (June 30, 1993), Lake App. No. 92–L–118, unreported, 1993 WL 256808.

■ Our analysis of R.C. 2505.06 and our concerns about restrictions on the statutory right of appeal lead us to adopt the latter view. The statute provides that an administrative appeal will not remain "effective as an appeal upon questions of law and fact" in the absence of a supersedeas bond. This provision does not render ineffective appeals on questions of law. Furthermore, "the law favors and protects the right of appeal" and requires a liberal construction of statutes governing appeals. *Maritime Mfrs., Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 258, 24 O.O.3d 344, 345, 436 N.E.2d 1034, 1035. Accord *Van Meter v. Segal–Schadel Co.* (1966), 5 Ohio St.2d 185, 187, 34 O.O.2d 345, 346, 214 N.E.2d 664, 665. In view of the law's requirement that courts narrowly construe restrictions on the use of real property, discussed below, we conclude that this position best furthers the statutory language and remedial interests.

■ We hold that when an appellant files an administrative appeal based on questions of law and fact, but fails to file a supersedeas bond, the common pleas

court should first determine whether the appeal may continue solely on questions of law. If the appeal can so proceed, the court should not dismiss the case, but instead should limit its review to questions of law. *Nutter, supra.* However, if the case cannot go forward on questions of law alone, the court should dismiss the appeal. In the instant case, the common pleas court determined that it could review the case solely on questions of law. The court's judgment reveals that it so confined its review. We find that the court properly circumscribed its analysis, and thus had jurisdiction to render its decision. Therefore, the city's second assignment of error is overruled.

For its first assignment of error, the city claims that:

"I. The common pleas court erred in sustaining Liberty's appeal because a ground-mounted sign is not permitted under the applicable provisions of the Kettering zoning ordinances."

The city asserts that the lower court's decision was not supported by the evidence, in that the zoning code prohibits the sign sought by LSB. LSB urges us to affirm the court's judgment as a matter of law.

R.C. Chapter 2506 establishes the common pleas courts' standard of review for administrative appeals. "[T]he function of a Court of Common Pleas in [an] R.C. Chapter 2506 appeal differs substantially from that of appellate courts in other contexts." *Cincinnati Bell, Inc. v. Glendale* (1975), 42 Ohio St.2d 368, 370, 71 O.O.2d 331, 332–333, 328 N.E.2d 808, 809. Rather than simply determining whether any legal justification exists for the administrative decision, "in interpreting the scope of review * * * we have held that ' * * * the Court of Common Pleas * * * must give consideration to the entire record * * * and must *appraise* all such evidence as to the credibility of the witnesses, the probative character of the evidence and the *weight* to be given it.' " (Emphasis *sic.*) *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1117, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390, paragraph one of the syllabus.

Because the common pleas court must examine the entire record, its hearing may resemble a *de novo* proceeding. *Cincinnati Bell, Inc., supra.* But the court may not "blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise." *Dudukovich, supra.* Instead, the court may reverse the administrative ruling if it finds "that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." R.C. 2506.04.

Our review upon appeal is more confined. R.C. 2506.04 states that the judgment "may be appealed by any party on questions of law as provided in the

Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." *Id.* The Supreme Court interpreted the statute to say:

"An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29–30, 465 N.E.2d 848, 852.

The court elaborated on the above language:

"This statute gives the common pleas court power to weigh the evidence, and to reach a decision reversing the [council] where the [council's] decision is not supported by 'the preponderance of substantial, reliable and probative evidence.' This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Id.* at 34, 12 OBR at 30, 465 N.E.2d at 852, fn. 4. Accord *Borgerding v. Dayton* (1993), 91 Ohio App.3d 96, 101, 631 N.E.2d 1081, 1084.

■ Therefore, we must determine, as a matter of law, whether there is a preponderance of substantial, reliable and probative evidence in the record to support the lower court's reversal.

■ Our resolution of this issue turns upon construction of the relevant portions of the Kettering Zoning Code, and whether the lower court's interpretation of those provisions is supported by a preponderance of the evidence. Ohio law is clear that courts will strictly construe restrictions on the use of real property in favor of the property owner.[1]

---

1. Although LSB is a tenant, we believe that these interpretive guidelines apply equally to regulations which constrict the property rights of lessees, when the tenant attempts to use the land in an otherwise lawful manner and with the knowledge and consent of the lessor. See *Cash v. Brookshire United Methodist Church* (1988), 61 Ohio App.3d 576, 580, 573 N.E.2d 692, 695 (zoning restrictions concern use of land, not ownership); *Lakewood Homes, Inc. v. Bd. of Adjustment* (1970), 23 Ohio Misc. 211, 222, 52 O.O.2d 213, 219–220, 258 N.E.2d 470, 480 (regulations are concerned with who has control of land), affirmed, modified, and reversed in part (1971), 25 Ohio App.2d 125, 54 O.O.2d 306, 267 N.E.2d 595. Cf. *State v. Bond* (1988), 47 Ohio Misc.2d 5, 7, 547 N.E.2d 422, 424 (lessee can violate zoning ordinance as well as can a landowner).

"Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. * * * Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed." (Citations omitted.) *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 245–246, 421 N.E.2d 152, 154; see *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 21, 580 N.E.2d 500, 503.

■ The meaning of the relevant provision of the code must be derived from the "context of the entire ordinance." *In re Univ. Circle, Inc.* (1978), 56 Ohio St.2d 180, 184, 10 O.O.3d 346, 348, 383 N.E.2d 139, 141. But any "[a]mbiguity must be construed against the zoning resolution because it is a police power exercise that constricts property rights." *Freedom Twp. Bd. of Zoning Appeals v. Portage Cty. Bd. of Mental Retardation & Developmental Disabilities* (1984), 16 Ohio App.3d 387, 390, 16 OBR 456, 458–459, 476 N.E.2d 360, 364, motion to certify record overruled (Sept. 12, 1984), No. 84–802, unreported.

Because this appeal concerns a request for a sign at a business located within a PUD in a business district, it implicates several sections of the city's zoning code. Section 1153.02(G)(7) provides that PUDs must comply with the sign requirements in Section 1171.12 of the code. Section 1171.12(B)(1)(b) states that PUDs located within a business district are permitted signs as specified in Section 1171.08. Section 1171.08 reads:

"SIGNS IN BUSINESS DISTRICTS

"A. The types of signs permitted as to use, structure, size, setback and number for each building or lot shall be regulated as follows. All functional and structural sign types not provided for below shall be prohibited.

"* * * *

"2. *Business Signs*

"a. The following types of signs are permitted:

"* * * *

"(3) *Ground and pole mounted signs * * *.*

"b. Permitted Number of Signs

"(1) Each principal structure containing a single occupant shall have a maximum of one ground sign, plus one additional wall, window, projecting or canopy sign for each face of the building with a public entrance, however, if no ground

mounted sign is erected, one additional wall, window, projecting, or canopy sign shall be permitted for the building.

"(2) Each principal structure containing multiple occupants shall have a maximum of one (1) ground mounted sign, plus a maximum of one (1) additional wall, window, projecting or canopy sign for each occupant within the building.

" * * *

"(c) Sign Area

" * * *

"(3) In no case shall the total area of all information on an individual ground mounted sign exceed sixty-four (64) square feet, or any other individual sign exceed seventy-five (75) square feet, unless otherwise permitted in these regulations.

" * * *

"6. *Identification Signs*

"a. Center Identification signs may be permitted in Business Districts based on approval of a [PUD] as provided for in Section 1153 of this Zoning Code. * * *" (Emphasis added.) Section 1171.08(A).

Read in isolation, Section 1171.08(A) would permit the ground-mounted sign requested by LSB.

However, Section 1171.08(A) is further modified by Section 1171.12(B)(2), which imposes additional standards upon PUD signs. The section reads:

"PLANNED UNIT DEVELOPMENT SIGN STANDARDS

" * * *

"B. Planned Unit Commercial Developments

" * * *

"2. In conjunction with the regulations in Section * * * 1171.08 * * *, additional standards for the proper placement and maintenance of signs within the confines of a Planned Unit Commercial Development shall be as follows:

"a. Center Identification Signs

"(1) Each [PUD] shall be permitted only one wall, ground or pole mounted Center Identification sign for each side of the development adjoining a public street, not to exceed fifty (50) square feet per side.

" * * *

"b. Business signs

"(1) Permitted signs for individual tenants or storefronts shall be wall or canopy signs mounted flat against the building and meet the following additional regulations:

"(a) Signs shall be no wider than fifty percent (50%) of the width of the storefront or one hundred (100) square feet in area, whichever is less.

" * * *

"(2) *Single occupancy buildings, either on the same or separate lot, which are a part of a commercial center, may apportion* their permitted sign area among two (2) wall-mounted signs, neither of which shall exceed seventy-five (75) square feet in size. * * * *Such buildings are not permitted to have pole-mounted signs.*" (Emphasis added.) Section 1171.12(B). The code distinguishes ground-mounted and pole-mounted signs, defining the former as "any free standing sign, *other than a pole mounted sign,* independently supported by the ground or mounted on a decorative wall or fence [emphasis added]," Section 1171.03(C)(4), while defining pole-mounted signs as "a sign mounted on a free standing pole or other similar supports," Section 1171.03(C)(5).

The common pleas court held that, since LSB is a single tenant of a single occupancy building within a PUD, Section 1171.12(B)(2)(b)(2) governs the sign request rather than Section 1171.12(B)(2)(b)(1), which applies to individual tenants within a multitenant building. Within the applicable subsection, the court reasoned, since the final sentence prohibits only pole-mounted signs, ground-mounted signs must be permitted, since they are a permitted use within Section 1171.08(A)(2)(a)(3) as incorporated by Section 1171.12(B)(1)(b).

We find this reasoning persuasive and, more important, supported by a preponderance of substantial, reliable and probative evidence as a matter of law. The code expressly permits ground-mounted signs within non-PUD business districts. Section 1171.08(A)(2)(a)(3). The city distinguishes between multitenant structures and single-tenant buildings and establishes different sign restrictions for each. Compare Sections 1171.08(A)(2)(b)(1) through (2) and 1171.12(B)(2)(b)(1) through (2). When the city desired to bar lessees of multitenant buildings from erecting ground-mounted signs, it stated, "Permitted signs for individual tenants or storefronts shall be wall or canopy signs." Section 1171.12(B)(2)(b)(1). As the common pleas court noted, "Presumably if the Council wanted to also exclude ground mounted signs [from single-occupancy buildings], it would have said so" in Section 1171.12(B)(2)(b)(2).

The city argues that the only ground-mounted sign mentioned in the code that is associated with a PUD is a center identification sign. We disagree. The structure of the code reveals that center identification signs are listed in Section

1171.08(A)(6) as a separate class of signs in addition to the business signs permitted by Section 1171.08(A)(2). Therefore, when PUDs are permitted only one center identification sign by Section 1171.12(B)(2)(a)(1), it is not to the exclusion of other signs permitted by Section 1171.08(A), which survive the "additional standards" of Section 1171.12(B).

The city also points to the language of Section 1171.12(B)(2)(b)(2) that single-occupancy tenants "may apportion their permitted sign area among two (2) wall-mounted signs" as indicative of the council's intent to limit these tenants to the same restrictions as tenants of a multitenant building. This logic fails for three reasons. First, if we were to strictly adhere to this language, it would restrict single-occupancy tenants even beyond what the city desires. The city argues that single-occupancy tenants are subject to the same sign restrictions as those in multitenant buildings, *i.e.*, wall or canopy signs. However, if the quoted language is narrowly applied, single-occupancy tenants would be limited to wall-mounted signs. Second, as even the city admits, the cited portion is permissive, not mandatory; the tenant is not required to apportion his permitted sign area between two wall-mounted signs.

Third, to adopt the city's construction of Section 1171.12(B)(2)(b)(2) would require us to ignore the final sentence of the subsection. "A court construing a provision in a city charter, statute, contract or other writing may not ignore the existence of any word or phrase." *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 53, 524 N.E.2d 441, 444. See *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 2–3, 387 N.E.2d 1222, 1224; *State v. Cole*, 94 Ohio App.3d 629, 635–636, 641 N.E.2d 732, 736. If Section 1171.12(B)(2)(b)(1) limited single-occupancy tenants to wall or canopy signs, the final sentence in Section 1171.12(B)(2)(b)(2) prohibiting pole-mounted signs would be mere surplusage. We believe the sentence is there for a reason, and we decline to read it out of the code.

Finally, the city points to Section 1135.05 of the code. This provision states:

"[No] structure or land [shall] be used in any manner or for any use except as expressly permitted by the zoning code of this city. Any prohibition or limitation appearing in the zoning code of the city shall not be construed to mean that those matters not prohibited or not limited are allowed."

■ The city argues that the zoning code is permissive in nature, that is, the code states only what may be done and does not attempt to delineate every prohibition. While we agree with that proposition in a general sense, the *Saunders* court reminds us, nevertheless, that "the scope of the restrictions

cannot be extended to include limitations not clearly prescribed." *Saunders, supra,* 66 Ohio St.2d at 261, 20 O.O.3d at 245–246, 421 N.E.2d at 154. Here, the council listed only one specific restriction, to wit, pole-mounted signs. The council prescribed only this limitation immediately after it had shown that, when it wanted to specifically limit the types of signs permitted by 1171.08(A), it could do so. After analyzing the relevant portions of the code in context, and mindful of the interpretive cautions set forth above, we hold that the lower court's judgment is supported by a preponderance of the evidence, as a matter of law. The city's first assignment of error is overruled.

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

WOLFF, J., concurs.

GRADY, Judge, dissenting.

I respectfully dissent from the decision of the majority overruling the first assignment of error.

Section 1171.12(B)(2)(b) of the Kettering Zoning Ordinances permits individual tenants in single-occupancy buildings that are located in a commercial center which has been designated a Planned Unit Commercial Development to use (1) a wall or canopy-mounted sign no larger than one hundred square feet or (2), at the option of the tenant, two wall-mounted signs each of which is no larger than seventy-five square feet to identify or advertise the tenant's business. The trial court erred in construing the ordinance to permit Liberty Savings Bank, a tenant, to install a ground-mounted sign, which according to Section 1171.12(B)(2)(a) is limited in the case of Planned Unit Commercial Developments to signs identifying the commercial center itself, one sign for each side of the development adjoining a public street.

Some of the difficulty presented in the application of this ordinance arises from the way in which businesses subject to the regulation are identified. Section 1171.12(B)(2)(b)(1) describes the business signs permitted for "individual tenants or storefronts." The argument is made that the terms identify but one class of individual tenants, those whose businesses are in strip storefront locations, because the terms are used in the alternative. However, the terms are not mutually exclusive, and the more specific of the two is not exhaustive of the more general. Some individual tenants may be in storefront locations while other individual tenants may be in other locations. Some, such as Liberty Savings

Bank, are in freestanding, single-occupancy buildings. They are individual tenants, nevertheless, and the signage limitations in subparagraph (1) apply to them as well as to those in strip storefronts. Subparagraph (2) then gives those in single-occupancy buildings the option to apportion the signage they are permitted in (1) to the different form of signage provided in subparagraph (2), which is therefore subsidiary to and dependent on subparagraph (1). Even if it is not so viewed, there is nothing in subparagraph (2) which permits any individual tenant to have a ground-mounted sign.

The trial court apparently viewed the prohibition against pole-mounted signs on single-occupancy buildings in the second sentence of Section 1171.12(B)(2)(b)(2) to permit ground-mounted signs, reasoning that failure to make a similar prohibition of them permits their use. The court's reasoning follows the rule that an express exception in a statute amounts to an affirmation of its application to all other cases not so excepted. However, the prohibition against pole-mounted signs in subparagraph (2) is not an exception of any kind. It is consistent with the other provisions of Sections 1171.12(B)(2)(b)(1) and (2), which limit signs on single-occupancy buildings to wall-mounted or canopy signs. It is, at most, mere surplusage. It probably reflects some zoning conflict long past, but it cannot be read to permit the use of a ground-mounted sign.

The review of the decision of the Kettering City Council performed by the court of common pleas was limited to errors of law made by the council. The authority of this court is coterminous with that of the court of common pleas in respect to that form of review. *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 580 N.E.2d 500. Therefore, a reversal by this court on the foregoing basis would not invade the discretion reserved to the court of common pleas.

I would reverse and reinstate the order of the Kettering City Council.