**RILEY, Appellee,**

v.

**LANGER et al.; Thompson and Company, L.P.A., Appellant.**

[Cite as *Riley v. Langer* (1994), 95 Ohio App.3d 151.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930605.

Decided May 25, 1994.

152

*Porter, Wright, Morris & Arthur* and *Duane A. Boggs,* for appellee.

*Thompson & Co., L.P.A.,* and *James W. Thompson,* for Thompson & Co., L.P.A.

*Per Curiam.*

Appellant Thompson & Co., L.P.A. ("the Thompson Firm") appeals from the order granting appellee Rebecca Riley's motion for attorney fees pursuant to R.C. 2323.51 and Civ.R. 11. In its appeal, the Thompson Firm raises two assignments of error. It contends in its first assignment of error that the trial court erred to its prejudice by denying both its motion for a definite statement or, in the alternative, to strike the fee request and its motion for a continuance, because Riley failed to state any grounds or factual basis supporting her claim for fees and, therefore, the Thompson Firm was not put on proper notice of a hearing to determine fees against it. In its second assignment of error the Thompson Firm argues that the trial court erred in awarding attorney fees against it where no violation of R.C. 2323.51 and/or Civ.R. 11 was established. We overrule the first assignment of error and sustain the second assignment of error only in part as it pertains to Civ.R. 11.

In September 1991, Riley filed a complaint on a promissory note, alleging that Ned Langer had defaulted on the note. The note had been signed by Charles Connett and Langer jointly and severally. Attorney Edward Craig signed and filed an answer to the complaint on behalf of Langer which contained seven affirmative defenses as well as a third-party complaint against Connett. Craig's signature was placed on a signature line underneath the words "THOMPSON & CO., L.P.A." Underneath his signature was the phrase "Attorney for Defendant Ned L. Langer."[1] The answer and third-party complaint admitted that Langer's

---

1. All documents filed by Craig on Langer's behalf were signed in this manner, except under his signature on some documents was the phrase "Trial attorney for Defendant Ned L.

signature was on the note; that the funds obtained in exchange for the note were paid to Southern Ohio Executive Yacht Club ("SOEYC"); and that Connett was the co-maker of the note.

Riley filed a motion for summary judgment, arguing that the promissory note was valid and enforceable and that Langer's affirmative defenses were not material in that they were moot, mere boilerplate, elevated form over substance, and/or were unsupported by law. The motion was accompanied by her attached affidavit stating, in part, that Connett, Langer, and Vicky Bezak had been shareholders in SOEYC corporation; that Bezak had filed a lawsuit against Connett and Langer, which they wanted to settle; that Connett and Langer needed money to settle the suit and to pay some of the corporation's overdue accounts; that she agreed to lend Connett and Langer $24,500 for ninety days; that Connett and Langer gave her a promissory note which provided that if Langer and Connett settled with Bezak, Riley would receive her one-third share in SOEYC and they would not be obligated to repay her; that Connett and Langer requested she make the check payable to SOEYC, which she did; and that she received neither stock nor reimbursement from Connett or Langer. An affidavit of Connett's with attached exhibits filed by Riley corroborated her affidavit.

Langer filed a response to Riley's motion for summary judgment, signed by Craig, with Langer's affidavit attached thereto. In his response he alleged that Riley participated in the management of SOEYC without the knowledge or consent of the company's board of directors; that Riley conspired with Connett to become an authorized signatory to the corporation's accounts; that Riley subsequently made unauthorized withdrawals greater than the amount of her claim and converted the funds to her own use; that the corporation brought a lawsuit against Riley ("the SOEYC lawsuit") which it subsequently dismissed; that the corporation had become insolvent; and that Langer's investment in the company had been diminished by an amount that fully offset or exceeded Riley's claim under the note.

In March 1992, Langer filed a motion to amend his answer to the complaint, again signed by Craig, stating in his affidavit attached thereto that he had not filed a counterclaim against Riley because of the SOEYC lawsuit, and requesting in the supporting memorandum that he be allowed to amend his answer to restate his claims against Connett and to assert a counterclaim against Riley on the same facts alleged in the SOEYC lawsuit. The proposed amended pleading was not attached to the motion. The trial court granted Langer's motion for

Langer" or "Trial attorney for Defendant and Third Party Plaintiff Ned L. Langer." Of course, if the document was an affidavit of Craig's it was signed only with his name.

leave to file an amended answer and counterclaim. The subsequently filed pleadings were signed by Craig.

Riley then filed a motion to dismiss the counterclaim for failure to state a claim because Langer lacked standing to assert the claims which belonged to SOEYC, the party actually injured. Connett filed a similar motion regarding the third-party complaint against him. Langer's response, signed by Craig, asserted for the first time that the counterclaim and third-party complaint were based on the theory that Langer had been fraudulently induced to sign the promissory note.

After oral arguments, the trial court granted Riley's motion for summary judgment. Riley subsequently filed a motion for summary judgment on the counterclaim.[2] On March 5, 1993, the trial judge granted that motion, holding that there were no genuine disputes with respect to any facts material to Langer's counterclaim.

On March 4, 1993, Riley filed a motion for attorney fees in which she requested a hearing and sought an order directing Langer and/or his attorneys Craig, the Thompson Firm and James W. Thompson as the principal of the Thompson Firm ("the Thompson attorneys"), among others, to pay her $10,500 in attorney fees pursuant to R.C. 2323.51 and Civ.R. 11. In her supporting memorandum, she cited pertinent parts of the statute and the rule and alleged that the attorneys had engaged in frivolous conduct and further stated that at the evidentiary hearing she would establish the facts necessary for the court to apply the law and award the fees. The certificate of service provided, in pertinent part, that the motion was served on the Thompson Firm by regular U.S. mail on February 25, 1993. The other law firm upon which Riley served her motion and from which she also sought attorney fees filed a reply. The record demonstrates that Riley then filed a reply memorandum in support of her motion for attorney fees, asserting in detail therein her allegations against the Thompson attorneys, and that she served her reply on the Thompson Firm and the other firm by regular U.S. mail on March 24, 1993. In her reply, Riley asserted that the Thompson attorneys violated R.C. 2323.51 by, among other things, asserting "SOEYC's purported claims as Langer's supposed counterclaim" and " 'took other action' by filing various motions and memoranda in connection with the asserted counterclaim," not warranted by existing law or supported "by a good faith argument for an extension, modification, or reversal of existing law." Riley argued that the Thompson attorneys violated Civ.R. 11 by "signing the answer and counterclaim

---

2. On November 23, 1992, a notice of substitution of counsel was filed on Langer's behalf by an attorney with another law firm. Therein he stated that he was replacing the Thompson Firm and James W. Thompson, and the attorney with Thompson who had filed for the continuance. This notice was amended February 2, 1993, to include Craig as a substituted attorney also.

despite the inherent contradictions between their allegations and Langer's multiple affidavits."

On April 28, 1993, the Thompson Firm filed a motion for an enlargement of time in which to answer Riley's motion for fees, asserting that it was not served with a copy of the motion by her attorney until April 16, 1993. The Thompson Firm also filed a motion for a definite statement or, in the alternative, to strike, asserting that it had not been served with a copy of the motion until April 16, 1993; that it had received a courtesy copy previously via the other law firm against whom Riley's motion was also filed[3]; that it had also received a courtesy copy of that firm's rebuttal brief; and that on March 26, 1993, it had received from Riley's attorney Riley's reply to the other firm's rebuttal brief.[4]

In its first assignment of error, the Thompson Firm asserts that the trial court erred by denying its motion for a definite statement or, in the alternative, to strike and its motion for continuance, because Riley failed to state the grounds or factual basis supporting her claim for fees, and because the Thompson Firm was not provided with proper notice that a hearing would be held to determine fees against it. Whether to grant or deny a motion for continuance rests in the sound discretion of the trial court and the court's decision will be disturbed on appeal only for an abuse of discretion. *State v. Beuke* (1988), 38 Ohio St.3d 29, 526 N.E.2d 274, certiorari denied *sub nom. Beuke v. Ohio* (1989), 489 U.S. 1071, 109 S.Ct. 1356, 103 L.Ed.2d 823. This same standard of review applies to a motion to strike. See *Schulman v. Lerner* (Apr. 15, 1992), Hamilton App. No. C–910462, unreported, 1992 WL 79613. An abuse of discretion implies an attitude on the part of the trial judge that is unreasonable, arbitrary, or unconscionable. *Ruwe v. Springfield Twp. Bd. of Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

R.C. 2323.51 requires that, prior to making an award of attorney fees for frivolous conduct in a civil case, the trial court do three things: (1) set a hearing date to determine whether particular conduct was frivolous and, if it was, to determine whether any party was adversely affected by it, and to determine the amount of an award, if one is to be made, R.C. 2323.51(B)(2)(a); (2) give notice of the date of the hearing to each party who allegedly engaged in frivolous conduct or who was allegedly adversely affected by it, R.C. 2323.51(B)(2)(b); and (3)

---

**3.** The Thompson Firm's motion does not state the date on which it was first made aware of Riley's motion for attorney fees, but obviously it was sometime prior to April 16, 1993.

**4.** The other firm filed both a reply memorandum and a rebuttal brief. Since the record does not reflect that a reply was filed by Riley to the rebuttal brief, we assume that the Thompson Firm is referring to Riley's reply memorandum in support of the motion for attorney fees filed March 24, 1993.

conduct the hearing described in R.C. 2323.51(B)(2)(a), allowing the parties and counsel of record to present any relevant evidence, including, as described in R.C. 2323.51(B)(5), evidence of legal services, time expended, and attorney fees associated therewith, necessitated by the alleged frivolous conduct, and determine whether the alleged conduct was frivolous, and whether a party was adversely affected by it, and then determine the amount of the award to be made, R.C. 2323.51(B)(2)(c). The record demonstrates that the trial court complied with these procedural requirements.

■ . The record demonstrates that on June 29, 1993, James W. Thompson and Craig, among others, were sent a copy of a letter sent to the trial judge by Riley requesting a hearing on her motion for attorney fees because Langer and Riley had been unable to settle on a plan for Langer to satisfy the judgment against him. The Thompson Firm received notice of the hearing, scheduled for July 26, 1993, on July 2, 1993.[5]

At the July 26, 1993 hearing, Riley's attorney repeated the allegations from her reply and offered into evidence the docket. There was no dispute that Craig was an associate of the Thompson Firm during the pertinent time. The court offered the Thompson Firm's counsel ample opportunity to put on evidence concerning the allegations, which he refused to do, saying that he would have liked to, but that he was not prepared to do so because he did not know the facts upon which Riley's claims against his client were based.

■ At the hearing Riley's attorney also submitted an affidavit and invoices concerning the services and fees necessitated by the Thompson Firm's and the other parties' alleged frivolous conduct. The affidavit divided the fees into two groups, those attributable to Langer and the Thompson attorneys and those attributable to Langer and the other firm and its attorneys. The Thompson Firm's attorney asserted, when provided an opportunity to do so by the court, that he would not examine Riley's counsel concerning his affidavit and invoices because he had not had the opportunity to review the materials beforehand. R.C. 2323.51(B)(5) states that the party seeking fees may submit such evidence to the court for its consideration or be ordered to submit such evidence to the court. There is no requirement that other parties receive the evidence prior to the

---

5. The Thompson Firm's attorney sent a letter to the trial court stating that he understood the hearing pertained only to fees claimed against the other law firm. There is no indication that this assumption was verified by the trial court or that the Thompson Firm attempted to further verify its assumption. The notice itself did not indicate that the hearing was limited to any particular party.

evidentiary hearing.[6]

Under these facts we cannot perceive how the Thompson Firm lacked notice either of the hearing or of the allegations asserted against it by Riley concerning attorney fees. We, therefore, hold that the trial court did not abuse its discretion by denying the Thompson Firm's motions.

In its second assignment of error, the Thompson Firm contends that the trial court erred in awarding attorney fees against it where no violation of R.C. 2323.51 and/or Civ.R. 11 was established. In its first accompanying issue for argument, the Thompson Firm asserts that it did not engage in frivolous conduct to harass or maliciously injure another party, nor was its conduct unwarranted under existing law or unsupported by a good-faith argument for an extension, modification or reversal of existing law. It states that the affidavit and invoices presented by Riley's attorney at the hearing "do not establish a basis for an award of attorney fees against Thompson & Co., L.P.A.," and argues that the invoices reveal fees claimed for motions decided against Riley. It is uncontested that at the July 23, 1993 hearing, Riley put on evidence of the Thompson Firm's conduct and submitted an itemized list of her attorney's services and fees, and that the Thompson Firm neither presented evidence nor contested Riley's evidence.

R.C. 2323.51(A)(2)(b) defines a claim as "frivolous" if it is "not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." "[A]nalysis of a claim under this statute boils down to a determination of (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 291, 610 N.E.2d 1076, 1078. The first question "requires a factual determination." *Id.* Because the trial judge "will have had the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved * * *, a finding as to the commission of frivolous conduct is entitled to substantial deference upon review." *Id.* at 292, 610 N.E.2d at 1079. Thus, we will not reverse a trial court's decision to impose sanctions under R.C. 2323.51 absent an abuse of discretion. *Turowski v. Johnson* (1991), 70 Ohio App.3d 118, 590 N.E.2d 434; *Shaffer v. Mease* (1991), 66 Ohio App.3d 400, 584 N.E.2d 77.

---

6. In fact, other counsel had not previously reviewed the affidavit and time sheets submitted by Riley's attorney, but adequately cross-examined Riley's attorney as to various items therein.

■ In the case *sub judice* the trial court found that the Thompson Firm had "engaged in frivolous conduct within the meaning of R.C. 2323.51 by (1) pursuing a counterclaim and (2) asserting a defensive position to Plaintiff Riley's claim on the promissory note, neither one of which was warranted under existing law or supported by a good faith argument for an extension, modification or reversal of existing law." [7] The record demonstrates that the Thompson Firm pursued a counterclaim and asserted a defensive position which their client had no standing to assert under Ohio law, see *Adair v. Wozniak* (1986), 23 Ohio St.3d 174, 23 OBR 339, 492 N.E.2d 426 (an individual shareholder cannot sue in his own capacity for a wrong committed against the corporation), and subsequently filed a fraud defense contradicting previous averments and affidavits prepared by the firm for its client. From our review of the record, we conclude that the trial court's decision that the Thompson Firm's conduct was frivolous is not so arbitrary, capricious or unreasonable as to be an abuse of discretion.

■ The Thompson Firm further asserts that Riley is precluded from receiving certain fees contained in the documents submitted at the hearing by Riley's attorney. The trial court held a hearing at which all parties were given the opportunity to present evidence and to cross-examine Riley's attorney. Riley's attorney, pursuant to R.C. 2323.51(B)(5), presented an "itemized list [and] other evidence of the legal services necessitated by the alleged frivolous conduct." The Thompson Firm did not object to the evidence presented and, thereby, waived any right to object on appeal.

■ The trial court, upon the evidence presented by Riley's attorney and the cross-examination of him by the other parties' counsel, overruled Riley's motion as it applied to Langer and the other law firm and granted it as it applied to the Thompson Firm, determining that Riley reasonably incurred $5,280 that was necessitated by the Thompson Firm's frivolous conduct. Since the Thompson Firm presented no evidence that the fees were not reasonable, the uncontroverted evidence presented by Riley was sufficient to support the fees awarded. See *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 266, 286, 598 N.E.2d 1187, 1200.

■ We disagree with the trial court's conclusion, however, as it applies to $405 of the $5,280 which was awarded as the result of Riley's motion for attorney fees. We have held in *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 561 N.E.2d 1001, that the trial court abuses its discretion in holding

---

7. The Second Appellate District has said that "an attorney who relies on a client's conclusory assertions and ignores settled principles of law does not act in good faith when the attorney commences a cause of action that conforms to the client's views but is not supported by law." *Tomb & Assoc., Inc. v. Wagner* (1992), 82 Ohio App.3d 363, 368, 612 N.E.2d 468, 471.

an opposing counsel liable for the attorney fees generated in connection with a Civ.R. 11 motion for sanctions. Therein we stated:

"We believe that to hold a plaintiff's attorney accountable for defendant's fees arising from the prosecution of the Civ.R. 11 motion puts the attorney in an untenable position: either he must forgo arguing against the motion and agree to pay defendant's attorney fees, or he can proceed to oppose the motion, thereby increasing defendant's fees and the amount he might eventually be required to pay." *Id.* at 170, 561 N.E.2d at 1005.

While the case *sub judice* was brought pursuant to both R.C. 2323.51 and Civ.R. 11, we believe that the reasoning we applied in *Newman, supra,* a case involving Civ.R. 11, should also apply to a case involving R.C. 2323.51. Thus, we sustain the Thompson Firm's assignment of error as to the $405 attributable to the fee motion as delineated in Riley's attorney's affidavit and accompanying invoices, and overrule its assignment of error as it pertains to the determination that the Thompson Firm's conduct was frivolous and the remaining amount of attorney fees awarded against the Thompson Firm pursuant to R.C. 2323.51.

In its second issue presented for review under this assignment of error, the Thompson Firm argues that Civ.R. 11 does not apply to it, but is applicable only to the attorney actually signing the pleadings. We agree.

Civ.R. 11 states that "[e]very pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated."[8] Furthermore, the signature of an attorney certifies that he has read the pleading, that to the best of his knowledge, information, and belief, the pleading is supported by good grounds, and that the pleading is not interposed for delay. Civ.R. 11. An attorney may be "subjected to appropriate action" for a willful violation of Civ.R. 11.

As the accompanying Staff Notes explain, "[t]he rule places the burden for truthfulness of the pleadings on the attorney—where the responsibility belongs. In effect, his signature, he being an officer of the court, is the verification." The purpose of Civ.R. 11 is to deter pleading and motion abuses and to assure the court that such documents are filed in good faith with sufficient grounds of support. *Newman, supra,* 54 Ohio App.3d at 169, 561 N.E.2d at 1004.

While we recognize that Civ.R. 11 and Fed.R.Civ.P. 11 differ in material aspects, see *Ceol, supra,* 81 Ohio App.3d at 290, 610 N.E.2d at 1078, we do not see a significant difference in the language of the two rules in their placement of

---

**8.** Civ.R. 11 is also applicable to motions and supporting affidavits and memoranda signed by an attorney. See Civ.R. 7(B)(4).

responsibility on the attorney actually signing a pleading or motion.[9] Both rules require an attorney to sign a pleading or motion in his individual capacity.

Interpreting Fed.R.Civ.P. 11, the United States Supreme Court has held that the language of the rule authorizes a court to impose sanctions *only* against the person who signs the document and not against the law firm on whose behalf he is signing. *Pavelic & LeFlore v. Marvel Entertainment Group* (1989), 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438.

In *Pavelic & LeFlore,* the court looked at the language in Fed.R.Civ.P. 11 that requires a court to impose sanctions "upon the person who signed [a document]" in context with the language requiring an individual signature and the language which describes what the signature constitutes. The court stated that "[j]ust as the requirement of signature is imposed upon the individual, we think the recited import and consequences of signature run *as to him." Id.* at 124, 110 S.Ct. at 459, 107 L.Ed.2d at 444. The court further explained that:

"The signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment. Where the text establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom the duty is placed." *Id.* at 125, 110 S.Ct. at 459, 107 L.Ed.2d at 444.

In explaining why an attorney signing his name as a member of a law firm does not delegate his liability under Fed.R.Civ.P. 11, the court pointed out that the rule calls for a signature in the attorney's individual name. It stated even were a signature on behalf of a law firm to have the effect of making the firm and all of its partners attorneys of record, it is only the signature of the attorney in his individual name which complies with the rule and it is to that signature, in that individual capacity, that the portion of the rule referring to sanctions applies. *Id.* at 125–126, 110 S.Ct. at 459, 107 L.Ed.2d at 444–445.

The Supreme Court disagreed with the argument that holding the law firm liable under Fed.R.Civ.P. 11 would best serve the policies underlying the rule.

---

**9.** Fed.R.Civ.P. 11 states, in pertinent part, that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address and telephone number shall be stated. * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose * * *."

The court recognized that such a holding might provide reimbursement to an innocent party for expenses, but explained:

" * * * The purpose of the provision in question, however, is not reimbursement but 'sanction'; and the purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. It is at least arguable that *these* purposes are better served by a provision which makes clear that, just as the court expects the signer personally—and not some nameless person within his law firm—to validate the truth and legal reasonableness of the papers filed, so also it will visit upon him personally—and not his law firm—its retribution for failing in that responsibility. The message thereby conveyed to the attorney, that this is not a 'team effort' but in the last analysis *yours alone*, is precisely the point of Rule 11." (Emphasis *sic*.) *Id.* at 126–127, 110 S.Ct. at 460, 107 L.Ed.2d at 445.

We acknowledge the reasoning of the United States Supreme Court, find it also applicable to Ohio's Civ.R. 11, and hold that it is only the attorney who signs the pleading in his individual capacity who can be sanctioned under Civ.R. 11. We, therefore, sustain the Thompson Firm's argument as it pertains to Civ.R. 11.

The trial court's fee order expressly awarded Riley attorney fees pursuant to R.C. 2323.51 and Civ.R. 11. Therefore, our holding that the Thompson Firm cannot be held liable pursuant to Civ.R. 11 does not affect its liability for attorney fees to Riley pursuant to R.C. 2323.51. Accordingly, that part of the trial court's order adjudging that the Thompson Firm violated R.C. 2323.51 is affirmed and the fee award is otherwise modified as to award Riley the sum of $4,880, which reflects the fees necessitated by the Thompson Firm's frivolous conduct and which excludes those fees attributable to the motion for attorney fees itself. To the extent that the order otherwise holds the Thompson Firm liable for fees under Civ.R. 11, the order is reversed and held for naught.

*Judgment accordingly.*

HILDEBRANDT, P.J., SHANNON and GORMAN, JJ., concur.