OPINION
Defendant-appellant, The Washington Township Board of Trustees ("WTBT"), appeals a decision of the Montgomery County Court of Common Pleas which reversed and modified the WTBT's decision disapproving the final site plan submitted by plaintiffs-appellees, Dayton Hudson Corporation — Target Store Division, Woodbriar, Incorporated, Ralph G. Woodley, Trustee, Gerald M. Woodley, Jennifer S. Santurbane, and E. Vincent Santurbane (collectively referred to as "Target") for the proposed development and construction of a Target department store in Washington Township, Ohio.
On July 12, 1996, Target filed an application with the Washington Township Zoning Commission ("WTZC") for approval of the development of a Target department store in Washington Township, Ohio. The proposed site for the Target project contains approximately 20.2 acres of land and is bordered on the north by Yanks Court, the east by Washington Village Drive, the south by Lyons Road, and the west by Yankee Street. According to the application, the owner of the property at issue is Mead Lyons Commercial Development and the applicant is Target Stores.[1]
The site had previously been zoned Planned Development Business and the proposed Target is a use consistent with such zoning. The area immediately surrounding the proposed Target site contains various businesses, including fast food restaurants, a car wash, and a furniture store. The application indicates that the Target development would consist of a Target store plus two additional retail stores and that the entire project would involve approximately 189,340 total square feet.
The WTZC held public hearings regarding Target's application on August 20, 1996 and October 15, 1996. Following the hearings, the WTZC voted to deny the application to develop a Target store on the proposed site. Thereafter, the WTBT held public hearings concerning the application for approval of the Target site plan on December 2, 1996 and December 16, 1996. Following the hearings, the WTBT made eighteen findings of fact concerning the application which are incorporated in the December 16, 1996 meeting minutes. Fifteen findings of fact are favorable to the proposed Target pro ject. The remaining three findings of fact are unfavorable to the proposed project and state as follows:
 16. The Final Development plan as submitted fails to meet the following minimum requirements of the Washington Township Zoning Resolution:
 a. There are discrepancies between the sub mitted information and the submitted plans. The submitted lighting brochure and the "carnival red" fixtures and poles shown on the plan do not agree. (The applicant has indicated a willingness to erect "carnival red" or bronze like fixtures and poles.)
 b. The plans show wall pack lights which would cause unshielded glare on surrounding property. The applicant has indicated a willingness to shield these lights which are to be located at emergency exits.
 c. The plans shown do not show the minimum requirements of loading spaces as required by the Washington Township Zoning Resolution. The applicant proposes to stripe out spaces to increase the availability of loading space. It is unclear though whether the restriping of parking area along Washington Village Drive would meet these requirements and retain enough parking spaces to meet the parking space requirements of the zoning resolution.
 d. The proposed "Target" sign is 15 feet high. The maximum permitted under the Township Zoning Resolution is 14 feet. According to the applicant the sign will be 14 feet high. The designation of 15 feet on the plan was a typographical error.
 e. The proposed retaining wall exceeds the 6 foot maximum height requirement. The applicant indicated a willingness to regrade the property so as to permit the wall to be reduced to 6 foot in height.
 f. The proposed 12 foot high loading dock wall exceeds the 6 foot maximum height requirement. The applicant states that the wall is part of the building and is present to help block the view of the loading area. The applicant is willing to remove the wall if requested.
 17. The proposed location and arrangement of the structure, parking areas, and appurtenant facilities are not compatible with the surrounding land uses.
 18. Even with the improvements to Yankee Street which the applicant is prepared to make, the roadways will not be safe to carry the traffic that will be imposed upon them by the proposed development. The driveways on the site of the proposed development will be adequate to serve the occupants of the proposed development.
Therefore, the WTBT determined that the proposed Target project should not be approved and voted to disapprove the final site plan.
On February 4, 1997, Target filed a notice of appeal with the Montgomery County Court of Common Pleas, pursuant to R.C. 2506. Subsequently, Terry Baltes, Thomas Kreusch, and John Higgins ("Intervenors"), owners of commercial property surrounding the proposed development site, were granted leave to intervene in the action by the trial court. The trial court held a hearing on June 18, 1997 in order to take additional evidence, since it was revealed that the testimony received by the WTBT was unsworn. On July 3, 1997, the trial court entered a decision reversing and modifying the decision of the WTBT. Specifically, the trial court found that the WTBT's decision disapproving the final site plan submitted by Target was unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence on the record. On July 25, 1997, the WTBT filed a notice of appeal from the trial court's decision in the Second District Court of Appeals. Intervenors filed a notice of appeal on July 31, 1997. Both appeals have been consolidated and transferred to this court for resolution.
The WTBT raise the following assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WASHINGTON TOWNSHIP BOARD OF TRUSTEES, IN REVERSING AND MODIFYING THE DECISION OF APPELLANT TO DISAPPROVE APPELLEES' FINAL SITE PLAN IN ZONING CASE NO. Z467F (DECISION, p. 12, 17, 18, and 19).
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WASHINGTON TOWNSHIP BOARD OF TRUSTEES, IN FINDING THAT APPELLEES HAD STANDING TO APPEAL THE DECISION OF APPELLANT TO DISAPPROVE APPELLEES FINAL SITE PLAN. (DECISION, p. 6-7).
In addition, intervenors assert the following assignments of error for our review[2]:
Intervenors' Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FINDING THAT THE WASHINGTON TOWNSHIP BOARD OF TRUSTEES ACTED UNREASONABLY, CAPRICIOUSLY, AND ARBITRARILY IN REJECTING APPELLEES' SITE PLAN BECAUSE SAID SITE PLAN DID NOT CONFORM TO THE REQUIREMENTS OF THE WASHINGTON TOWNSHIP ZONING RESOLUTION IN FIVE PARTICULARS, NAMELY, UNSHIELDED LIGHTS, INSUFFICIENT LOADING SPACES, SIGN HEIGHT, WALL HEIGHT, AND LOADING DOCK HEIGHT.
Intervenors' Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN FINDING THE WASHINGTON TOWNSHIP BOARD OF TRUSTEES' DECISION REJECTING THE FINAL SITE PLAN BECAUSE OF LACK OF COMPATIBILITY TO BE UNSUPPORTED BY THE PREPONDERANCE OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE, AND CONTRARY TO LAW.
Intervenors' Assignment of Error No. 3:
 THE TRIAL COURT'S DECISION FINDING THAT THE WASHINGTON TOWNSHIP BOARD OF TRUSTEES' DECISION ON THE ISSUE OF COMPATIBILITY WAS NOT SUPPORTED BY THE PREPONDERANCE OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE IS, ITSELF, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR OUTSIDE THE EVIDENCE INTRODUCED AT TRIAL.
Intervenors' Assignment of Error No. 4:
 INTERVENORS WERE DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT GAVE INTERVENORS ONLY 12 DAYS TO PREPARE FOR TRIAL, THUS DEPRIVING INTERVENORS OF AN OPPORTUNITY TO CALL THEIR EXPERT WITNESS ON THE ISSUE OF COMPATIBILITY AND WHEN THE TRIAL COURT DECIDED THIS CASE ONLY 3 DAYS AFTER SOME 48 PAGES OF BRIEFS WERE PRESENTED TO THE COURT FOR CONSIDERATION.
In its first assignment of error, the WTBT contend that the trial court erred by reversing and modifying its decision to disapprove Target's final site plan. The WTBT argue that the trial court's decision is not supported by a preponderance of substantial, reliable, and probative evidence because the site plan submitted by Target to the WTBT failed to meet the minimum requirements of the Washington Township Zoning Resolution, the evidence clearly indicates that the proposed Target store was incompatible with the surrounding land uses, and the WTBT's findings of fact indicated that the roadways will not be safe to carry the traffic expected to be generated by the proposed development.
Intervenors' first, second, and third assignments of error are similar to the WTBT's first assignment of error and will be considered together with the WTBT's first assignment of error. In their first assignment of error, Intervenors contend that the trial court erred by finding that the WTBT acted unreasonably, capriciously, and arbitrarily in rejecting Target's site plan because the site plan did not conform to the requirements of the Washington Township Zoning Resolution in five particulars, namely, unshielded lights, insufficient loading spaces, sign height, wall height, and loading dock height. In their second assignment of error, Intervenors contend that the trial court erred by finding the WTBT's decision rejecting the final site plan because of lack of compatibility to be unsupported by the preponderance of reliable, probative, and substantial evidence and contrary to law. In their third assignment of error, Intervenors contend that the trial court's decision finding that the WTBT's decision on the issue of compatibility was not supported by the preponderance of reliable, probative, and substantial evidence is against the manifest weight of the evidence and/or outside the evidence introduced at trial.
R.C. 2506.01 provides for review by a court of common pleas of any final order or decision of an administrative agency. Upon its review of an administrative decision, "the Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." Dudukovich v. Lorain Metro. Housing Auth. (1979),58 Ohio St.2d 202, 207. The trial court is not permitted to substitute its judgment in place of the administrative agency's decision. Id. The trial court must consider the entire record and evaluate the credibility of the witnesses and the probative value of the evidence presented. Id., quoting Andrews v. Board ofLiquor Control (1955), 164 Ohio St. 275, paragraph one of the syllabus. After reviewing the evidence, the trial court may find that the administrative decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record" and then affirm, reverse, vacate, or modify the administrative decision appealed from, consistent with its findings. R.C. 2506.04; Manning v. Straka (1962), 117 Ohio App. 55,57.
Upon appeal from the decision of the court of common pleas, it is the duty of the court of appeals to determine whether the trial court appropriately applied the standard of review required by R.C. 2506.04. Dudukovich, 58 Ohio St.2d at 207. In an administrative appeal, an appellate court has a stricter scope when reviewing the trial court's judgment. Id.; Borgerding v.Dayton (1993), 91 Ohio App.3d 96, 101. An appellate court must "affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a pre ponderance of reliable, probative and substantial evidence." Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34; Liberty Sav. Bank v. Kettering (1995), 101 Ohio App.3d 446,451; Borgerding, 99 Ohio App.3d at 101.
The record indicates that the trial court heard testimony from several witnesses at the June 18, 1996 hearing. Gary Huff, Washington Township Administrator and land use planner, testified that the final site plan submitted by Target did not meet the requirements of the zoning resolution in five respects, namely, unshielded lights, insufficient number of loading spaces, height of the sign, retaining wall height, and loading dock height.[3] Huff also stated that the proposed Target building would be incompatible with the buildings in the area immediately surrounding the proposed location in that the Target building would be larger and taller than the other buildings. Huff stated that the parking lot of the proposed Target would also be much larger than any other parking lot in the immediate area and that the only comparable parking lot in the area belonged to a car dealership approximately one mile from the proposed Target location. In addition, Huff testified that the WTBT expect final site plans to be correct when they are submitted for final approval, although Huff admitted that the WTBT has the option to approve a final site plan with conditions.
Terry Foegler, president of the Campus Partners for Commercial Urban Redevelopment for Ohio State University and land use planner, testified that although S.R. 725, which is in close proximity to the proposed Target site, is a very large retail area, the Target project is not compatible with the existing surrounding land uses in the immediate area. Foegler stated that the appearance of the proposed Target building is incompatible with the immediately surrounding area in which the project would be developed because the Target building would appear industrial in nature and would be totally out of character in terms of the surrounding smaller scale developments.
Jeff Wray, an architect, testified that the proposed Target project is not compatible with the area immediately surrounding it because the location of the property does not have direct access to S.R. 725, one of the major traffic arteries in the area, the physical size of the building is much larger when compared to the other buildings around it, the building lacks fenestration, or doors and windows, similar to the window patterns, entryways, and openings of the other buildings surrounding the site, and the large parking area in the front of the Target building would create an inconsistent appearance because it would differ from the other buildings in the immediate area which all have a similar setback from the public right of way.
Timothy Dunham, a real estate appraiser, testified that in his opinion, the proposed Target project would be incompatible with the immediately surrounding area because the Target building would be much higher than the buildings and homes located in the area immediately surrounding it, the hours of operation would differ from the surrounding businesses, the building, which would be approximately 189,000 square feet, is incredibly large when compared to the square footage of other surrounding businesses, and the proposed Target would have a regional draw of customers, unlike the surrounding small retail businesses which tend to draw point of destination customers. Dunham stated that in his opinion, the proposed Target site acts as a buffer area to protect the adjacent residential housing.
Charles Abramovitz, a retired consultant previously employed by Woolpert, an engineering, planning and architectural landscape firm, testified that the proposed location of the Target store is part of a huge commercial, business, office park, and multifamily area. Abramovitz stated that in his opinion the development of the subject property as a Target store is compatible with the surrounding uses when the entire regional area, as opposed to the immediately surrounding area, is evaluated. Abramovitz stated that in terms of compatibility, it is necessary to look beyond the immediately surrounding area. Abramovitz also stated that since the plans indicate that an existing office building would be demolished in order to build the Target facility, it may not be entirely true that only small office-type buildings are desirable in the immediately surrounding area. According to Abramovitz, although the proposed Target building is higher than the three buildings presently located in the same quadrant as the proposed site, the height of the proposed building is less than the maximum height permitted by the zoning regulations. Abramovitz stated that the proposed Target store will be an appropriate transitional use for the property in question even though it will abut residential property, due to the proposed landscaping of the site. Abramovitz stated that he is familiar with the process in Washington Township for the approval of site plans and in his experience, they were always approved with conditions.
The trial court found that the WTBT's disapproval of Target's final site plan was unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable and probative evidence on the record. In a lengthy and well-written decision, the trial court addressed each finding of fact upon which the WTBT based its decision to disapprove Target's final site plan.
The trial court determined that the six alleged deficiencies found in finding of fact number 16 a through f were minor, having at most a nominal impact upon the public welfare, health, and safety. The trial court found that the first deficiency, regarding the color of the light fixtures and poles, which states that the color indicated on the site plan differs from the color indicated on the brochure, contains a parenthetical explanation that Target will change the color of the light fixtures and poles. The trial court also found that the deficiency regarding the unshielded wall pack lights never existed, as the testimony before the WTBT was that the wall pack lights did have a shield so that the actual light bulb could not be seen from the street. In addition, the trial court explained that the record indicates that the height of the "Target" sign will in fact be 14 feet, as required by the zoning regulations, and that the stated height in the site plan of 15 feet was a typographical error. The trial court found that the twelve foot high screening wall for the loading docks, which exceeded the six foot maximum height specified in the zoning regu lations, was included in the site plans in response to concerns by, and apparent approval of, the WTZC and that in any event, Target had indicated its willingness to remove the wall if requested. The trial court found the remaining two deficiencies to be easily cor rectable by the regrading of a certain area to ensure that the retaining wall does not exceed six feet in height, which Target had indicated a willingness to do, and restriping of the parking spaces to accommodate three additional loading spaces. The trial court further determined that it would not be necessary for Target to correct the six alleged deficiencies and resubmit the plan to the zoning commission since R.C. 2506.04 permits the trial court to modify the decision of the WTBT consistent with its findings.
In terms of compatibility, the trial court found that the proposed Target store would be compatible with the surrounding land uses. The trial court found that, after observing the expert witnesses and evaluating their testimony, Abramovitz' opinion that the proposed Target building would be compatible with the surrounding land uses in terms of the entire regional area was more reliable, probative, and substantial. The trial court stated that even if it were to accept the explanation of the other expert witnesses con cerning evaluation of the proposed Target in terms of the immediately surrounding area, the court found that the proposed site has been zoned business and commercial for at least 25 years and that the only differences between the use of the property as a Target store and the immediately surrounding buildings is the size of the proposed Target building and the intensity of the use. However, the trial court found that the size of the proposed Target building and the intensity of the use are clearly within the zoning requirements and do not make the Target store incompatible with surrounding land uses. The trial court also noted that Ed Anzek, the only expert who testified on the issue of compatibility at the hearing before the WTBT, stated that the proposed Target store was compatible with the surrounding land uses.[4]
In terms of the traffic and safety issue, the trial court found that the WTBT's decision to disapprove the Target proposal based upon increased traffic and usual safety concerns which accompany increased traffic is not supported by a preponderance of substantive, reliable and probative evidence and is not in accord with law. The trial court found that a preponderance of the evidence presented at the WTZC and WTBT hearings indicates that safety would not be compromised by the proposed Target store. The trial court stated that the evidence indicates that Target has specific plans to minimize any hazards which would result from increased traffic. Therefore, the trial court found in favor of Target and approved the final site plan as modified by Target's commitments for changes with respect to the six alleged deficiencies listed by the WTBT in number "16, a through f" of their findings of fact incorporated into the December 16, 1996 meeting minutes.
After carefully reviewing the entire record, including the additional testimony presented to the trial court, we find no error by the trial court in approving, with modifications, the final site plan submitted by Target for the development of a Target store in Washington Township. See Kisil,12 Ohio St.3d at 34; Kettering, 101 Ohio App.3d at 451. The record indicates that the trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence and is not erroneous as a matter of law. Kisil, 12 Ohio St.3d at 34; Borgerding,91 Ohio App. 3d at 101. Accordingly, the WTBT's first assignment of error and Intervenors' first, second, and third assignments of error are overruled.
In its second assignment of error, the WTBT contend that the trial court erred by finding that Target had standing to appeal the WTBT's decision to disapprove the final site plan. The WTBT argue that in an administrative appeal pursuant to R.C. 2506, Target does not have standing to appeal because it does not own the property at issue and failed to present evidence that it has power to control the property at issue.
While R.C. 2506 governs the procedure for appealing an administrative decision, the statute fails to establish which parties have standing to bring an administrative appeal. R.C.2506.01; Willoughby Hills v. C.C. Bar's Sahara, Inc. (1992),64 Ohio St.3d 24, 26. The Ohio Supreme Court has held that in order to initiate a direct appeal of an administrative order pursuant to R.C. 2506, the complaining party must be "directly affected" by the administrative decision. Schomaeker v. First Natl. Bank
(1981), 66 Ohio St.2d 304, 311-312. Specifically, in Schomaeker, the supreme court found that a person who owns property adjacent or contiguous to a proposed land use site, actively participates in the administrative proceedings, and attends hearings with counsel, is "directly affected" by the decision of the administrative agency and has standing to appeal the administrative decision. Id. at 312.
Likewise, a party is not prohibited from initiating administrative proceedings concerning a particular parcel of land when it holds an option to purchase the property. Where a party has an option to purchase the particular property in question but does not own it, actively participates in the administrative proceedings, and has a pecuniary interest in the property, such party is "directly affected" by the administrative agency's decision and has standing to bring an appeal from that decision.Duffy v. Board of Bldg. and Zoning Appeals (Aug. 21, 1992), Lake App. No. 91-L-068, unreported; Norris v. Chester Twp. Bd. ofTrustees (Aug. 16, 1991), Geauga App. No. 90-G-1585, unreported. Further, once a properly initiated administrative proceeding is concluded with a final deci sion, a party who only holds a contract to purchase the subject property but is adversely affected by the order may bring a direct appeal pursuant to R.C. 2506. See Norris, Geauga App. No. 90-G-1585, unreported.
The record indicates that at the time the application was submitted to the WTZC, Target had secured an option to purchase the property at issue and that the owners of that property were parties to that proceeding. While the particular option contract is not a part of the record before us, the record does contain the affidavit of Norm Brody who is the regional real estate manager — Target division. According to Brody's affidavit, dated February 27, 1997, Target had secured options on the Washington Township property where the proposed Target store was to be located.[5]
Brody's affidavit also reveals that Target had expended approximately $400,000 with respect to securing options on the property and initiating the governmental review and approval process. In addition, Target participated in all of the proceedings and was represented by counsel.
Based upon the facts contained in the record before us, we find that Target had standing to appeal the final administrative order of the WTBT. When the initial proceedings began, Target held an option to purchase the property in question and had expended a considerable sum of money with respect to the application and approval process of the proposed Target store. See Duffy, Lake App. No. 91-L-068, unreported; Norris, Geauga App. No. 90-G-1585, unreported. Target participated in all of the proceedings and was represented by counsel. See Schomaeker,66 Ohio St. 2d at 311-312. Further, the final administrative decision was adverse to Target and directly affected its interest in the subject property. See id. at 311-312; Duffy, Lake App. No. 91-L-068, unreported; Norris, Geauga App. No. 90-G-1585, unreported. Accordingly, the WTBT's second assignment of error is overruled.
In their fourth assignment of error, Intervenors contend that they were denied due process of law when the trial court allowed them only twelve days to prepare for trial which deprived them of an opportunity to call their expert witness on the compatibility issue, and when the trial court decided the case three days after the parties' briefs were presented to the court for consideration.
The record indicates that on April 4, 1997, Intervenors filed a motion to intervene in the proceedings before the trial court. The trial court granted Intervenors' motion to intervene on June 3, 1997. The record indicates that on June 6, 1997, the trial court and all counsel met in chambers and discussed the scheduling of a hearing for additional testimony. The record further indicates that after all counsel were provided an opportunity to consult their calendars, the trial court and all counsel agreed to set the matter for trial on June 18, 1997 and that the court would consider additional briefs or memoranda if filed by June 30, 1997. On June 13, 1997, Intervenors sought a continuance because an expert witness they wished to present would not be available on the date set for trial. The trial court overruled Intervenors' motion. The matter proceeded to trial on June 18, 1997, the date previously agreed to by all parties. At the hearing, Intervenors presented two expert witnesses on their behalf. The WTBT, Target, and Intervenors filed post-hearing briefs and memoranda by the June 30, 1997 deadline and the trial court entered a decision three days later.
The decision whether to grant or deny a continuance rests within the sound discretion of the trial court. Riley v. Langer
(1994), 95 Ohio App.3d 151, 157; Sayre v. Hoelzle-Sayre (1994),100 Ohio App.3d 203, 208. The trial court's decision in such regard will not be disturbed on appeal absent an abuse of discretion. Riley, 95 Ohio App.3d at 157.
After reviewing the record, we find no abuse of discretion in the trial court's decision overruling Intervenors' motion for a continuance. Id. at 157; Sayre, 100 Ohio App.3d at 208. All parties had previously agreed to the date on which the matter was heard and Intervenors presented two expert witnesses on their behalf at the hearing. Further, we find no error was committed by the trial court in ruling on the case three days after the briefs were filed as there is no evidence that the trial court failed to fully consider all of the issues presented. Accordingly, Intervenors' fourth assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
William W. Young, P.J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3) of the Ohio Constitution.
James E. Walsh, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3) of the Ohio Constitution.
Stephen W. Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3) of the Ohio Constitution.
Copies mailed to:
Roger J. Makley
Merle F. Wilberding
Robert J. Surdyk
Jeffrey C. Turner
Don A. Little
Hon. Barbara P. Gorman
[1] The application contains affidavits indicating that the property is owned by Mead Lyons Commercial Development, Community Insurance Company, and George T. Shapland.
[2] Whenever possible, the assignments of error submitted by the WTBT and Intervenors will be combined.
[3] The five deficiencies noted by Huff are enumerated in the WTBT's finding of fact number "16, b through f," as found in the minutes of the December 16, 1996 WTBT meeting. According to Huff, the deficiency stated in number "16, a" of those findings of fact, concerning the proposed color of the light poles and fixtures, was merely a discrepancy between the plans and the information that was submitted.
[4] We note that Anzek's testimony is not contained in the record before us.
[5] Brody's affidavit states that "Target's control of the properties under option for the proposed Washington Township site expires on July 30, 1997. The contracts can only be extended if government approval of the project has been obtained by September 30, 1997, and even then, only for the preparation of closing documents and closing the transaction."