Plaintiff-Appellant Chris Neary appeals the trial court's decision, order, and entry overruling his appeal from the Moraine Board of Zoning Appeals' (hereinafter "BZA's") denial of several applications for permits to construct billboards, and overruling his motion for partial summary judgment with respect to an action for declaratory judgment against the City of Moraine. Neary asserts nine assignments of error.
Neary, through his company American Outdoor Advertising, is engaged in the business of leasing property upon which he constructs billboards, and renting the billboard space to others for advertising, announcements, promotion of a particular viewpoint, and the like. Between September 1994 and March 1996, Neary submitted three applications for permits to construct billboards to the Building and Zoning Inspector for the City of Moraine, Charles E. Huber, as is required by the Codified Ordinances of Moraine (hereinafter "COM") § 1189.04. Huber approved three permits and Neary began preparing one of the sites for construction of the billboard. In addition, Neary submitted five more applications for permits to construct billboard signs in Moraine to Huber. Huber, after reviewing the zoning code, determined that the first three permits should not have been granted and they were subsequently revoked; the five remaining permits were also denied.
Neary appealed Huber's decisions to the BZA in a timely manner, and also requested that if the decisions were upheld, he be granted variances for the eight proposed billboards. Two hearings were held in which the BZA denied all eight of Neary's applications for permits and refused his request for variances for them as well. The basis for the denials of the permits and also the variance requests was that the size of billboards was limited, according to the BZA's interpretation of the zoning code, to fifty square feet. The billboards Neary proposed to construct were to be 672 to 900 square feet in size.
Neary appealed the BZA's decisions to the Montgomery County Court of Common Pleas pursuant to R.C. § 2506.01. In his brief to the court, he asserted five assignments of error. First, Neary claimed the BZA acted in an arbitrary, capricious, and unreasonable manner by interpreting the zoning code as limiting billboards to no more than fifty square feet in size. Second, he argued that the code sections relevant to the BZA's decision were unconstitutional since they had the effect of banning all billboards within the city limits of Moraine. Third, Neary contended the zoning code contained an unconstitutional delegation of legislative authority inasmuch as the BZA enjoyed unfettered discretion in determining whether to grant or deny variance requests. Fourth, Neary argued that the code was being arbitrarily enforced, and fifth, he claimed the BZA should be equitably estopped from revoking the three previously granted permits.
The Common Pleas Court sustained Neary's first assignment of error, finding that, contrary to the BZA's decision, the proposed billboards fell within the code's definition of a "ground sign", but that they were not described by the definitions of "free standing signs," which are limited in size to fifty square feet, or "poster panel sign," which may be no larger than twelve feet by twenty-five feet. On that basis, the court remanded the case to the BZA with instructions to "determine what restrictions or limitations apply to Neary's billboards." Since the BZA's decision was based on an erroneous interpretation of the code, the court found Neary's second assignment of error to be moot. Similarly, the court found Neary's equitable estoppel argument to be moot. As for his third and fourth assignments of error, the court concluded the BZA did not have unfettered discretion in determining whether to grant variances, and found the evidence submitted by Neary concerning his claim that a permit similar to those he requested had been granted was not sufficiently supported by Neary's personal knowledge; both assignments of error were therefore overruled. In summary, the court affirmed Neary's first assignment of error, overruled his third and fourth, and found his second and fifth to be moot. No appeal was taken from the court's decision.
On remand, the BZA conducted a hearing on July 28, 1997, at which,inter alia, the applicability of the code's definition of "commercial advertising sign" to billboards was addressed. Neary through counsel, Huber, and Michael Sandner, counsel for the city of Moraine each testified to their understanding of the relevant code sections. The Moraine city planner, David Watson, also testified as to the historical development of the zoning code pertaining to signage. In addition, several residents of Moraine offered testimony, for the most part in opposition to the proposed billboards. The BZA concluded that Neary's billboards were "commercial advertising signs" as defined by the code. It then voted on each of Neary's permit requests individually with the exception of one that, due to a conflict of interest of one of the board members, could not be voted on for lack of a quorum, and another that Neary had previously withdrawn. Each request was denied by unanimous vote, as were Neary's requests for variances. The remaining permit and variance request was denied after the BZA reconvened with a quorum.
Soon after the BZA's determination, Neary filed a complaint for declaratory judgment and money damages against the city of Moraine requesting that the court declare Moraine's zoning code unconstitutional as it relates to billboards, grant the permits requested, and award Neary damages. At the same time, Neary filed an appeal from the BZA's decisions with the common pleas court. These cases were consolidated pursuant to Civ.R. 42(A) at Neary's request, and the materials from the earlier proceedings were transferred for inclusion in the record of the current cases as well.
In his second appeal to the common pleas court, Neary claimed that the BZA could not assert the "defense" of the applicability of the code's definition of "commercial advertising sign" to billboards, and disputed its applicability to billboards. Neary also argued that the code placed no size limitations whatsoever on billboards. In support, he appended a copy of the Moraine law director's letter to the city council stating as much, and a copy of the city's resolution to declare a moratorium on all billboard permits to allow time to consider appropriate legislation. Finally, Neary claimed to be entitled to the permits requested for the reasons stated in his second, third, fourth, and fifth assignments of error in his first appellate brief to the court, which he incorporated by reference. In doing so, he stated "[t]o the extent that this Court declined to rule on those Assignments or found Mr. Neary's arguments moot in light of its holding as to the First Assignment of Error, Mr. Neary respectfully requests that this Court now consider those arguments for the first time." In addition, he asked that, "[t]o the extent this Court addressed and overruled those Assignments of Error, Mr. Neary respectfully requests that this Court reconsider its decision." Included in Neary's brief was a motion for partial summary judgment respecting his complaint for declaratory judgment.
The common pleas court affirmed the BZA's decisions regarding the permits and variances requested. In doing so, it declined to address the four assignments of error from Neary's first appeal that he had attempted to incorporate by reference, stating that such did not comport with the requirements of App.R. 16(A). On Neary's motion for partial summary judgment, the court found Neary had not overcome the strong presumption of the validity of the pertinent zoning code sections and that he had not, as a matter of law, shown that the provisions applied to him were unconstitutional. Neary now appeals both decisions of the Court of Common Pleas resulting from his two appeals to that court.
As a preliminary matter, we must determine whether the decision of the trial court following Neary's first appeal to that tribunal constituted a final appealable order. If we find it was, then Neary's failure to appeal from that decision in a timely manner will operate to deprive this court of jurisdiction over certain of Neary's assigned errors having their genesis in the trial court's first decision.
Although the parties cite the relevant provisions of R.C. § 2505.02, which defines final appealable orders, as it appeared on April 25, 1997, the date the trial court's first decision was filed, the since-revised statute "applies to and governs any action, including an appeal, that is pending in any court on [July 22, 1998] * * * and all claims filed or actions commenced on or after [July 22, 1998] * * *. Because Neary filed his appeal in this court on September 21, 1998, the revised version of the statute applies. We note, however, that under either version, the result would be the same.
R.C. § 2505.02(B) enumerates the types of orders that are final and appealable as follows:
 An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 (3) An order that vacates or sets aside a judgment or grants a new trial;
 (4) An order that grants or denies a provisional remedy and to which both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following a final judgment as to all proceedings, issues, claims, and parties in the action.
 (5) An order that determines that an action may or may not be maintained as a class action.
 We conclude that none of the above describe the trial court's first decision in the case before us, and that as a result, it was not a final appealable order and is presently amenable to review.
As for R.C. § 2505.02(B)(1) and (2), above, we note that a "substantial right" is described as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. § 2505.02(A)(1). A landowner has a common law right to the enjoyment and use of his or her land. C. H. C. I. Co. v. Tucker (1891), 48 Ohio St. 41,49. When the land is leased, the lessee acquires the lessor's right to the enjoyment and use of the land, and becomes the owner of the land for all practical purposes so long as the lease is in force. Cooper v. Roose
(1949), 151 Ohio St. 316, 323; 65 Ohio Jurisprudence 3d (1996), Landlord and Tenant § 8. Although no lease agreements appear in the record to show that Neary has actually leased the parcels upon which he intends to erect billboards, there is some evidence to suggest that he has done so. Even assuming that to be true, however, any right he may have acquired therefrom has not been "affected" as required by R.C. § 2505.02
(B)(1) and (2). "An order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." Bell v. Mt. Sinai Med. Ctr. (1993),67 Ohio St.3d 60, 63. We have explained the inquiry as to whether a substantial right has been affected for final appealable order analysis as follows:
 For an order to affect a substantial right, the appellant must as a threshold matter establish that vindication of that right on appeal after final judgment is not available. * * * In other words, a substantial right is affected when, absent an immediate * * * appeal, the impact of the order upon the appellant's legal rights cannot effectively be examined by the appellate court and appropriate relief granted if warranted. * * * A substantial right is not affected merely because an order has the immediate effect of restricting or limiting that right. Rather, a substantial right is affected when there is virtually no opportunity for an appellate court to provide relief on appeal after final judgment from an order that allegedly prejudiced a legally protected right. (Cites omitted.)
 State v. Chalender (1994), 99 Ohio App.3d 4, 6-7. Since the trial court's first decision did not preclude the possibility of Neary's applications being granted on remand, we cannot say his substantial right to use the land, if existent, was affected by the decision. Therefore, we conclude that the neither R.C. § 2505.02(B)(1) nor (2) provide a basis for finding the trial court's first decision to be a final appealable order.
Furthermore, because administrative determinations are not judgments but are instead orders, adjudications, decisions, or even adjudication orders, R.C. § 2505.02(B)(3) does not apply to the trial court's first decision, as it did not vacate a judgment. In addition, no provisional remedy was granted or denied, and the case does not involve a class action. Consequently, none of the remaining subdivisions in R.C. § 2505.02(B) are applicable to the first decision of the trial court. Therefore, we find that the trial court's first decision was not a final appealable order, and that our consideration of the assignments of error asserted by Neary having their genesis in that decision is appropriate at this time.
Neary presents nine assignments of error to this court. First, he claims the Court of Common Pleas was without authority to remand the case for a determination of which restrictions in the zoning code applied to the permits he requested. Next, he argues the BZA's reliance on the definition of "commercial advertising signs" was a defense waived by the BZA, and that the court's finding to the contrary was error. In his third assignment of error, Neary contends the court's opinion pursuant to his second appeal was inconsistent with and contradictory to the court's opinion pursuant to his first appeal. Fourth, Neary claims the BZA's interpretation of the zoning code was unconstitutionally arbitrary, capricious, and unreasonable, and that the court's agreement with the BZA was error. Fifth, Neary asserts a manifest weight of the evidence argument. Sixth, he contends the court erred by allegedly failing to rule on each of his five assignments of error asserted in his first appeal. Seventh, Neary argues that his free speech rights have been unconstitutionally infringed because neither the BZA nor the code identify a legitimate governmental interest to be served by a billboard ban. Eighth, Neary claims the burden imposed on individuals seeking a variance is unconstitutionally high. Finally, Neary reasserts the equitable estoppel argument first advanced in his initial appeal to the Court of Common Pleas.
Before addressing the merits of Neary's arguments, we note that the standard of review appropriate in appeals to this court from a trial court's review of an administrative decision is not different from that in the usual appeal. Cahill v. Board of Zoning Appeals of City ofDayton (1986), 30 Ohio App.3d 236, 237-38. Our review is confined to that of questions of law, and we must affirm the common pleas court unless we find that, as a matter of law, it abused its discretion.Id., citing Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34 at fn.4. With these principles in mind, we proceed to consider the errors assigned by Neary in his brief.
 I.
The trial court erred to the prejudice of Appellant by remandingthis case back to the Board for consideration of what restrictions, if any,applied to Appellant's applications for building permits.
Under his first assignment of error, Neary claims the trial court acted outside its authority by remanding the case to the BZA for a determination as to what restrictions are placed on billboards by the zoning code. He argues that instead, the trial court should have ordered the BZA to issue the permits requested.
Neary contends the trial court had no authority to remand the case to the BZA for additional hearings and a subsequent order incorporating the new facts adduced at the hearings. He refers us to R.C. § 2506.04, which limits the court of common pleas to affirming, reversing, vacating, or modifying the order, adjudication, or decision of the administrative agency, or to remanding the cause to the agency with instructions to enter an order, adjudication, or decision consistent with the findings or opinions of the court. In addition, he cites Mad River Sportsman's Club, Inc. v.Jefferson Twp. Bd. Of Zoning Appeals (1993), 92 Ohio App.3d 273,Zannieri v. Norwalk Bd. of Bldg. and Zoning Appeals (1995),101 Ohio App.3d 737, and McMaster v. Housing Appeals Bd.
(Nov. 26, 1997), Summit App. No. 18226, unreported, for the proposition that a common pleas court is without authority to remand a case back to an administrative agency with the instruction that the agency conduct additional evidentiary hearings. We note that Neary's argument might also be supported by Williamson v. Township Trustees of Chester Twp. (1969),18 Ohio App.2d 188, and Ruggiero v. Brooklyn Bd. ofZoning Appeals (1964), 95 Ohio Law Abs. 28. We acknowledge that there is a split of authority between the appellate courts of Ohio on this issue. Compare Zannieri, supra; Mad River Sportsman's Club,supra; Williamson, supra; Ruggiero, supra, and McMaster, supra (all finding trial court lacked authority to remand case to administrative agency), with Superior Metal Prod., Inc. v.Administrator, Ohio Bur. of Emp. Serv. (1975), 41 Ohio St.2d 143;In re Rocky Point Plaza Corp., (1993), 86 Ohio App.3d 486; and Chapman v. Ohio State Dental Bd. (1986), 33 Ohio App.3d 324
(finding trial court has authority to remand case to administrative agency for further proceedings and a new decision).
In our view, however, the question of a common pleas court's authority to remand a case to an administrative agency was answered by the Ohio Supreme Court in Superior Metal, supra, in which the court stated that "the power to reverse and vacate decisions necessarily includes the power to remand the cause to the decision maker. * * * [W]e hold that a court's remand effectuates a revival of jurisdiction over a cause which may enable the subordinate tribunal or administrative body to conduct further proceedings and to render a new decision." Id. at 146. This holding has been found to be applicable to other statutes setting forth a common pleas court's authority, including the one at issue here, when acting as a reviewing court in an appeal from an administrative agency's decision. State ex rel. Westbrook v. Ohio Civil Rights Comm. (1985),17 Ohio St.3d 215, 217-18 (recognizing exclusive grant of jurisdiction to common pleas court in R.C. § 4112.06(F) does not deprive court of its power to remand to administrative agency as a component of its authority to reverse and vacate agency decision); In reRocky Point Plaza, supra at 496-97 (applying holding of SuperiorMetal to R.C. Chapter 2506 appeal); Chapman, supra at 328-29 (stating general rule that reviewing courts may remand to agency even absent a statute conferring such power, and applying Superior Metal to appeal brought under R.C. § 119.12).
Furthermore, we note that the statute at issue in Superior Metal
is more restrictive of the trial court's power to remand than the statute applicable in Rocky Point Plaza and the present case in that it does not expressly provide for remand to the agency, but instead limits the court's authority to reversal, vacation, or modification of the agency's decision. See R.C. § 4141.28(O). In contrast, R.C. § 2506.04
explicitly allows for remand from the trial court to the agency so long as the court also instructs the agency to enter a decision consistent with the court's opinion. This power is bestowed upon the common pleas court in addition to the power to reverse and vacate or modify an administrative decision under the statute. For this reason, the common pleas court's power to remand a case to the administrative agency should be read as being no more restricted, and perhaps even less restricted, under R.C. § 2506.04 than it is under R.C. § 4141.28(O). Moreover, the language of R.C. § 2506.04 does not, in our view, require the common pleas court to dictate to the agency precisely what the decision pursuant to remand must be, nor does Superior Metal support that proposition. Once a court remands to the administrative agency, the agency's jurisdiction over the matter is revived. Superior Metal, supra
at 146. That being so, the agency may conduct further proceedings and render a new decision. Id.
We also note, however, that the trial court's order did not remand the case to the BZA for the purpose of further evidence taking, but instead remanded for a determination of what restrictions and/or limitations in the zoning code applied to billboards like those Neary sought to build. Specifically, the court concluded its first decision by stating the following:
 Because the Board's decision is based solely on its incorrect reading of the Code and this Court cannot determine whether the Board in fact weighed the competing interest of Neary and the public, the Court reverses the Board's decision. The Board is to determine what restrictions or limitations apply to Neary's billboards.
Even if, in spite of the Ohio Supreme Court's decision in Superior Metal, we were of the opinion that the common pleas court did not possess the authority to remand the case for further proceedings and a new decision by the agency, we still would not find the court's order to the BZA to be beyond its authority as provided in R.C. § 2506.04. The statute permits the trial court to instruct the BZA to enter an order, adjudication, or decision consistent with the findings or opinions of the court. The trial court found, and the BZA conceded, that the wrong code section, one that would have limited Neary's signs to fifty square feet, had been applied to the proposed billboards. In this regard, Neary prevailed in his first appeal, and the BZA's decision was reversed. Neary contends that the only option for the trial court at that point was to direct the BZA to issue an order granting the requested permits. We disagree. R.C. § 2506.04 explicitly permits the trial court to remand the case to the administrative agency with instructions to enter a decision consistent with the findings or opinions of the court. Although the precise language of the statute was not used by the court in its order, we do not find the court's choice of words to be a significant departure from what is expressly within its authority to order pursuant to R.C. § 2506.04.
Neary claims the BZA violated the mandate of the trial court's order by engaging in additional evidence taking. Even if true, that issue was waived by Neary's failure to raise it in his second appeal to the trial court. After careful and repeated review of Neary's brief in his second appeal, we find he presented no argument that the BZA exceeded the trial court's mandate in its first decision by holding additional evidentiary hearings. His argument there, although similar, claimed instead that the BZA improperly applied a zoning code section it allegedly had not previously relied upon in its prior decision. Neary contended that on remand the BZA was without authority to apply any zoning regulations other than those specifically mentioned by the trial court in its first decision. This argument does not encompass the one Neary raises for the first time before this court respecting the BZA's additional evidence taking. Furthermore, Neary offered no objection to the additional evidence taking at the second hearing before the BZA, but instead participated in the proceeding with gusto. Courts should not approve of a practice in which a litigant is able to place himself in a position to take advantage of a favorable outcome while, at the same time, avoid an unfavorable outcome by later bringing to an appellate court's attention error which could have, should have, and would have been avoided by proper objection at the time the error was committed. See State v. Glaros (1960), 170 Ohio St. 471, 475. Therefore, the issue of whether the BZA's additional evidence taking exceeded the trial court's direction on remand was waived by Neary's failure to object at the hearing, and by his failure to raise the issue in his second appeal to the trial court; it will not be addressed in the first instance by this court.
Thus, Neary's first assignment of error is without merit, and it is overruled.
 II.
The trial court erred to the prejudice of Appellant by upholdingthe Board's use upon remand of the restrictions found in MZC [sic]§ 1189.05 relating to "commercial advertising signs" after theboard waived that defense by failing to raise it during theinitial administrative appeal of this matter to the trial court.
In his second assignment of error, Neary claims that the BZA was erroneously permitted to assert as a defense the size limitations applicable to "commercial advertising signs" found in COM § 1189.05 on remand from the trial court. Neary argues that the BZA was precluded from applying the disputed definition to billboards by its failure to rely on the size limitations for "commercial advertising signs" in the initial hearing before the zoning authority and in his first appeal to the trial court. In addition, he argues that the doctrine of res judicata
bars the BZA from relitigating the issue of what zoning regulations are applicable to billboards.
Prior to the trial court's first decision, the BZA had considered whether the proposed signs were "commercial advertising signs." In its brief to the trial court on the first appeal, however, the BZA did not attempt to argue that Neary's proposed billboards were "commercial advertising signs," and instead contended such signs were "poster panel signs" limited in size to not more than 300 square feet in size. In addition to rejecting the BZA's initial finding that billboards in Moraine are limited to fifty square feet, however, the trial court also stated that "the definition of poster panels does not and cannot reasonably be interpreted to impose limitations on billboards." Thus, both restrictions argued by the BZA as being applicable to the billboards were found by the trial court to be erroneous, and the BZA was instructed by the court to "determine what restrictions or limitations apply to Neary's billboards" on remand. How the BZA could have accomplished this task without resort to other definitions within the code, as Neary argues it should have, and without manufacturing new restrictions out of thin air, which we presume would have been equally distasteful to Neary, is a mystery. As the trial court remarked in its second decision when faced with the argument Neary repeats here, determining which provisions of the code applied to Neary's billboards was "precisely what the Court directed the Board to do upon remand." We agree and conclude that the BZA was not precluded from considering the applicability of COM § 1189.05 on remand. The correctness of the BZA's application will be discussed under Neary's fourth assignment of error,infra.
Neary also contends the doctrine of res judicata is applicable to bar the BZA's reliance on COM § 1189.05 after remand from the trial court. He cites Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379,Set Products, Inc. v. Bainbridge Twp. Bd. Of Zoning Appeals (1987),31 Ohio St.3d 260, and Prime Properties, Ltd. Partnership v.Cleveland Bd. of Zoning Appeals (May 18, 1995), Cuyahoga App. No. 67600, unreported, in support. Each of those cases, however, involved a separate action subsequent to a final adjudication by an administrative body or a final judgment by the common pleas court which were not appealed. The doctrine of res judicata is triggered only by a final judgment, which we have determined, supra, the trial court's first decision in this case was not. On that basis it is distinguishable from the cases cited by Neary.
Neary's argument essentially contends that because the BZA relied on other provisions of the zoning code in the first hearing, it was limited to those same provisions in the second hearing after remand from the trial court. In fact, the opposite is true. Because the trial court found the provisions relied upon by the BZA to be erroneous, the BZA was required to resort to other provisions of the zoning code in order to comply with the trial court's order that it determine which of the code's restrictions on signage applied to the proposed billboards. In other words, since the BZA's first determination that Neary's billboards were not in conformity with the zoning code was reversed by the trial court on appeal, the BZA's decision had no preclusive effect in subsequent proceedings. See Newton v.Pennsylvania Iron Coal, Inc. (1993), 85 Ohio App.3d 353, 356, citing Vestal, Res Judicata/Preclusion (1969) at 235. We conclude, therefore, that the BZA's application of COM § 1189.05 to the proposed billboards in the proceedings on remand was not barred by the doctrine ofres judicata.
Neary's second assignment of error is accordingly overruled.
 III.
The trial court erred to the prejudice of Appellant by upholdingthe action of the Board taken on July 28, 1997 and August 4, 1997despite the fact that these actions were not consistent with theopinions and findings of the trial court as set forth in DecisionI.
In his third assignment of error, Neary basically restates the argument made in his second. Specifically, Neary claims the BZA's decision that the definition of "commercial advertising signs" applies to billboards was inconsistent with the trial court's order which, he contends, limited the BZA to determining what, if any, restrictions applied to "ground signs" or "billboards." We agree with the BZA, however, that the trial court's instruction to it on remand was to "determine what restrictions or limitations apply to Neary's billboards." In considering this argument in Neary's second appeal, the trial court found, as we did above, that the BZA did not act inconsistently with the court's direction in applying other provisions of the zoning code to the proposed signs. We find Neary's third assignment of error no more meritorious than his second; it is consequently overruled.
 IV.
The trial court erred to the prejudice of Appellant by upholdingthe Board's unconstitutionally arbitrary, capricious, and unreasonableinterpretation of the code.
In his fourth assignment of error, Neary contends billboards do not fall within the zoning code definition of "commercial advertising signs," and that that definition, if applied to billboards, causes absurd results. Neary also argues that the only limitations placed on billboards by the zoning code are those relating to setbacks and facing requirements pursuant to COM § 1189.19.
As we consider Neary's arguments, we are mindful of the general rule that zoning regulations be construed most strictly against the zoning authority, as such regulations are in derogation of the common law and deprive a property owner of certain, otherwise legal uses of his or her land. LibertySav. Bank v. Kettering (1995), 101 Ohio App.3d 446, 452, quoting Saunders v. Zoning Dept. (1981), 66 Ohio St.2d 259,261. The scope of any restrictions cannot be enlarged to include limitations not clearly prescribed. Saunders, supra at 261. In addition, "[t]he authority of the municipality to regulate the erection of signs and billboards within its boundaries is not questioned. See R.C. 715.27
(A)(1). The control of the non-communicative aspects of the medium is a legitimate governmental interest." Norton Outdoor Advertising v.Arlington Heights (1982), 69 Ohio St.2d 539, 540.
At issue is whether the zoning code's definitions of "commercial advertising signs" and "ground signs" are both applicable to the billboards Neary wishes to construct. COM § 1115.03(347.1) defines "commercial advertising signs" as follows:[1]
 "Commercial advertising sign" means any sign which describes, touts, or offers for sale a product or service either directly or indirectly. Commercial advertising signs also include signs advertising the availability of real estate for sale, lease or rent when such signs are not located on the parcel or real estate being advertised and signs which identify or promote a business or institution.
The definition for "ground signs" appears under COM § 1115.03(355), and reads as follows:
 (355) "Ground sign" means a free-standing sign supported by one (1) or more uprights, braces or pylons located in or upon the ground, or something requiring location on the ground, including "billboards" or "poster panels", [sic] so called.
Neary claims, and the BZA does not contest, that billboards fall within the definition of "ground signs." Where the parties differ is on whether billboards may also be characterized as "commercial advertising signs." Neary's position is that since billboards are "ground signs" under the code, they cannot also be "commercial advertising signs." We agree with the trial court, however, and find that the various definitions pertaining to signs in the zoning code are not mutually exclusive in every instance. In our review of the zoning code, it is apparent that some, perhaps even most signs would quite easily fit within two or more of the definitions pertaining to signs.
Neary correctly points out that the trial court found the fact that the word "billboards" appears in the definition of "ground signs" but is not mentioned in the definition of "commercial advertising signs" confusing and ambiguous. The court also found, however, that because the definition for "ground signs" describes signs according to their physical characteristics, and the definition for "commercial advertising signs" describes signs according to their content or message, the two definitions were not mutually exclusive or incompatible. We agree. That does not, however, resolve the question as to whether billboards are "commercial advertising signs."
Neary contends that billboards are not "commercial advertising signs" because the messages conveyed by billboards are subject to frequent change. As a result, Neary argues, a billboard might be a "commercial advertising sign" one day, and not the next. As an example, Neary suggests that a billboard temporarily left blank would not be subject to the regulation as a "commercial advertising sign" under the zoning code. We are persuaded, however, by the BZA's observation that the zoning code contemplates the scenario described by Neary in COM § 1189.17(d), which allows that "[s]igns which * * * no longer serve the purpose for which they were intended * * * shall be removed * * * within sixty (60) days * * *." From this provision, it can be concluded that any billboard, or any other type of sign for that matter, remaining blank for such a length of time that it no longer served the purpose for which it was intended is subject to removal within sixty days of its becoming nonfunctional. Neary's point, though well made, would cause any sign that became blank during a change in its message to fall outside any pertinent zoning code regulation based on the content of the sign, and indeed out of the definition of "sign" altogether.[2]
Thus, at first blush, and without engaging in a more searching examination of the zoning code, it appears the billboards Neary wants to construct fall within the code's definition of "commercial advertising signs." We do not, however, read statutes or ordinances in isolation. The Supreme Court of Ohio has noted that a number of basic rules must be followed by a reviewing court in construing statutes. The court stated as follows:
 First, all statutes which relate to the same general subject matter must be read in pari materia. And, in reading such statutes in pari materia, and in construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all statutes. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict. (Cites omitted.)
 Johnson's Markets, Inc. v. New Carlisle Dept. of Health (1991),58 Ohio St.3d 28, 35. The same is true of municipal ordinances. See Consolidated Mgmt., Inc. v. Cleveland (1983), 6 Ohio St.3d 238,242. In that regard, we construe the zoning code definition of "commercial advertising sign" in pari materia with other provisions relating to the same subject matter. COM § 1189.05 places limits on the size of "commercial advertising signs" according to district and reads, in relevant part, as follows:
Commercial advertising signs shall be regulated as follows:
* * *
(c) Sign Size Limitations per District.
(1) [Industrial] M2 and M1 Districts.
 A. Building or premises under 10,000 square feet: Total message area of all commercial advertising signs on premises may not exceed ten (10) square feet for each 1,000 feet of floor area of the portion of the structure or structures housing the activity being advertised. Any sign or signs exceeding this above formula shall not be permitted unless approved by variance.
 B. Building or premises over 10,000 square feet: Total message area of all commercial advertising signs on premises may not exceed 100 square feet plus five (5) square feet for each 1,000 square feet of floor area or over 10,000 square feet of the portion of the structure or structures housing the activity being advertised. Any sign or signs exceeding this above formula shall not be permitted unless approved by variance.
 (2) Business Districts B1 and B2. Total message area of all commercial signs on premises may not exceed one and one-half (1 1/2) square feet for each linear foot of building or premises frontal width. Such signs may be free standing (maximum of one) or attached to or painted on a building or premises. In no case, however, shall any part of the sign be allowed to project above the top of the wall or extend beyond the ends of the wall to which they are attached, except for an approved roof sign. Any sign or signs exceeding this above formula shall not be permitted.
 (3) Office District. Total message area for all commercial advertising signs may not exceed one and one-half (1 1/2) square feet for each linear foot of building or premises frontal width. Such signs may be free standing (maximum of one) or attached or painted on a building or premises. In this district commercial advertising signs shall be only for advertising of the business being conducted on the lot on which the sign is located. Any sign or signs exceeding this above formula shall not be allowed unless approved by variance.
 (4) Agricultural District. Total message are for all commercial advertising signs may not exceed one and one-half (1 1/2) square feet for each linear foot of building or premises frontal width. Such signs may be free standing (maximum of one) or attached or painted on a building or premises. In this district commercial advertising signs shall be only for advertising of the business being conducted on the lot on which the sing is located. Any sign or signs exceeding this above formula shall not be allowed unless approved by variance.
 (5) R Districts. No commercial advertising signs shall be permitted except:
 A. Sign less than two (2) square feet attached flat against building, which states only the name and occupation of persons engaged in a legal home occupation. Only one (1) sign per building shall be allowed.
 B. Signs associated with churches, schools or other permitted nonresidential uses. Such signs shall conform to regulations applicable to them listed in other areas of this chapter.
After careful consideration of the ordinances defining and setting size limitations on "commercial advertising signs," we conclude that, for the reasons that follow, the regulations on such signs cannot reasonably be found to apply to billboards.
We note that the size limitations in COM § 1180.05(c)(1)(A) and (B) pertaining to industrial districts are distinguished from each other on the basis of the size of the building or premises upon which the sign is situated; (A) relating to those premises being under 10,000 square feet, and (B) being for those over 10,000 square feet. This, in and of itself, is not problematic. Both subdivisions, however, go on to limit the size of the signage in proportion to the square footage of the "floor area of the portion of the structure or structures housing the activity beingadvertised." (Emphasis added.) If these provisions are read to apply to billboards, the size of the billboard would depend on the square footage of the business being advertised, which may or may not be locally situated. It is here that a problem develops. If one were to advertise a local auto body shop, for example, the regulation does not create an insurmountable obstacle to determining how large the sign might be since would at least be theoretically possible to measure the square footage of the building housing the auto body shop. If the advertiser were RJ Reynolds, however, it would be practically impossible to determine the permissible size of the billboard. The same would be true in the case of a coporation housed in tens or even hundreds of structures around the world; automobile manufacturers, and financial institutions come to mind. In addition, one could conceive of a situation where a massive billboard advertising the product or service of a large, perhaps multi-national corporation might be permissible under the formula set forth in COM § 1189.05(c)(1) since the ordinance includes no limit on the maximum size allowable. Moreover, billboards sometimes carry social, political, or philosophical messages placed by groups having no physical offices. The ordinance provides no method for determining the permissible size for a billboard carrying such a message in an industrial district.
COM § 1189.05(c)(2), (3), and (4) provide size limitations on "commercial advertising signs" situated in business, office, and agricultural districts, respectively. The ordinance allows the signs to be either free standing or attached or painted on a building or premises. The trial court's first decision, however, rejected the BZA's characterization of billboards as "free standing signs" since such signs are limited in size to fifty square feet, COM § 1189.07, and the BZA conceded that its application of the restrictions applicable to "free standing signs" to billboards was erroneous. Thus, billboards, if they are "commercial advertising signs," can only be placed in a business, office, or agricultural district if they are attached to or painted on a building or premises. In addition, COM § 1189.05(5)(A) expressly requires all "commercial advertising signs" in residential districts to be attached flat against a building. All parties agree, however that a billboard is a "ground sign" which we noted, supra, is defined as being "a free- standing sign supported by one (1) or more uprights, braces or pylons located in or upon the ground, or something requiring location on the ground * * *." There is no way to reconcile the definition of "ground sign" with the application of "commercial advertising sign" restrictions to billboards.
Moreover, COM § 1189.19, establishes setback and facing requirements for billboards located in business districts as follows:
 (a) Billboards within any B * * * district shall be set back from the established right-of-way line of any State or Federal highway, any major or secondary street so designated by the official Thoroughfare Plan, and from the right-of-way line of any other street or highway, at least as far as the required front yard depth for a principal building in such districts.
 It makes no sense to impose setback limitations on signs that are required to be attached to or painted on a building or premises. In fact, after careful scrutiny of the zoning code, it is our observation that the size limitations contained in COM § 1189.05(c)(2) can only be applied to billboards if other express references to billboards in the code are ignored.
We conclude that the size requirements set forth in COM § 1189.05 cannot reasonably be construed as applicable to billboards. To hold otherwise would place outdoor advertising businessmen and their customers in a position of having to ascertain the total square footage of the advertiser's combined business and/or manufacturing premises in order to determine the permissible dimensions of the billboard. Consequently, each advertising customer would be entitled to a sign different in size from the other customers, and those seeking to convey, for example, a non-commercial philosophical message would be left with no way to calculate the permissible size of the sign on which they could place their message. In addition, the trial court's finding that COM § 1189.05 applies to billboards places that ordinance in direct and irreconcilable conflict with other sections of the zoning code that expressly apply to billboards.
Therefore, after construing the ordinances most strictly against the zoning authority, we agree with Neary that the BZA's application of the size limitations placed on "commercial advertising signs" by COM § 1189.05 was unreasonable, arbitrary, and capricious. Further, we find the trial court's conclusion that the BZA's determination was supported by a preponderance of substantial, probative, and reliable evidence to be an abuse of discretion due to the irreconcilability of the code provisions placing size limitations on "commercial advertising signs" and the provisions of the code which expressly concern billboards. Accordingly, we sustain his fourth assignment of error.
 V.
The trial court erred to the prejudice of Appellant by upholding thedecisions of the board to deny Appellant's permits despite the fact thatthose decisions were against the manifest weight of the evidence.
Neary presents in his fifth assignment of error an argument that the trial court's determination that the BZA properly denied the requested permits was against the manifest weight of the evidence. We need not address this issue, however, because our resolution of Neary's fourth assignment of error renders it moot. App.R. 12(A)(1)(c).
 VI.
The trial court erred to the prejudice of Appellant by failing to ruleupon each of the arguments raised by Appellant during his administrativeappeals.
In his sixth assignment of error, Neary claims both that the trial court failed to rule on each of his five assigned errors in his first appeal to that court, and that the court erroneously disregarded the allegedly unresolved assignments of error when he attempted to incorporate them by reference into his appellate brief submitted in connection with is second appeal to the trial court. We disagree.
Neary's argument assumes, without citing any authority, that the trial court was required to address each and every assignment of error he presented in his brief respecting the first appeal to that court. We presume that the basis for Neary's argument is App.R. 12(A) which requires a court of appeals to decide each assignment of error except for those assignments of error made moot by the appellate court's resolution of another. App.R. 12(A), however, has been found inapplicable to trial courts acting as appellate courts in appeals from administrative agencies. InSchira v. Stow (1990), 69 Ohio App.3d 841, 843-44, the Ninth District Court of Appeals reasoned as follows:
 Under R.C. 2506.01, the decisions of the commission may be reviewed by the courts of common pleas "as provided by Chapter 2505 of the Revised Code, except as modified by this chapter * * *." (Emphasis added.) R.C. Chapter 2505, and specifically R.C. 2505.03 upon which appellant relies, does permit the application of some of the Rules of Appellate Procedure in administrative appeals. However, R.C. Chapter 2505 is modified by R.C. 2506.04, the statute under which the common pleas court reviewed the commission's decision.
Under R.C. 2506.04, a common pleas court may:
 "* * * find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court."
This statute requires only that the common pleas court review the commission's decision to determine whether it was supported by the preponderance of substantial, reliable and probative evidence; there is no requirement that the court address all assignments of error. Indeed, this court has previously held that "* * *[t]hough there is a requirement that a court of appeals rule upon all assignments of error properly submitted (App.R. 12(A)), there is no similar requirement relating to [a] common pleas court, which is required to meet only that issue or those issues which are necessary in order to resolve the case." In re Annexation of 1,544.61Acres (1984), 14 Ohio App.3d 231, 235. (Parallel cites omitted.)
Accord Barker v. Kattelman (1993), 92 Ohio App.3d 56, 68. Thus, the trial court was not required to address each of the assignments of error presented by Neary in his appeal of the administrative decision. We also note, however, that even if App.R. 12(A) were applicable to administrative appeals, the trial court did dispose of each of Neary's assignments of error in his first appeal to the extent required under that rule; one was sustained, two were overruled, and the remaining two were rendered moot by the court's resolution of the sustained assignment of error.
Since we find no error in the trial court's handling of Neary's five assignments of error in his first appeal to that court, we need not address his argument that the assignments of error allegedly overlooked by the court should have been resolved in his second appeal to the trial court.
Neary's sixth assignment of error is overruled.
 VII.
The trial court erred to the prejudice of Appellant by upholding theBoard's interpretation of the code despite the fact that neither the Boardnor the code set forth the legitimate governmental interest to be served byprohibiting all billboards from within the City of Moraine.
 VIII.
The trial court erred to the prejudice of Appellant by upholding theBoard's denial of Appellant's requests for area variances despite the factthat the code imposes an unconstitutionally high burden of proof necessaryto obtain an area variance.
 IX.
The trial court erred to the prejudice of Appellant by failing to findthat the Board was estopped from denying his applications after three of thepermits had been lawfully issued by the zoning inspector.
In his seventh and eighth assignments of error, Neary challenges the constitutionality of the zoning code as applied and the constitutionality of COM § 1189.22 which states under what circumstances a variance will be granted, respectively. In his ninth assignment of error, he claims the trial court erred by not finding that the BZA was estopped from denying him three permits for billboards that had initially been granted, then revoked. Like his fifth assignment of error, these three assignments of error are rendered moot by our resolution of Neary's fourth assignment of error, wherein we determined that COM § 1189.05 had been erroneously applied to Neary's requests for permits to construct billboards. Thus, we decline to address the merits of his arguments under these assignment of error. App.R. 12(A)(1)(c).
In conclusion, we overrule Neary's first, second, third, and sixth assignments of error, and sustain his fourth assignment of error which renders his fifth, seventh, eighth, and ninth assignments of error moot. The decision, order and entry of the trial court is affirmed in part and reversed in part, and because we find the restrictions upon which Neary's permit requests were denied to be inapplicable to billboards, we remand this case to the Board of Zoning Appeals and order that Neary be granted the requested permits.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Richard T. Lauer
Michael W. Sandner
Robert J. Surdyk
Hon. Adele M. Riley
[1] In its second decision, the trial court noted that the City of Moraine has amended certain portions of its zoning code since the BZA's denial of Neary's permits. In setting forth the relevant portions of the zoning code, we, like the trial court, refer to those provisions as they appeared when Neary's permit requests were denied by the BZA.
[2] COM § 1115.03(341) defines a sign as "any words, lettering, figures, numerals, phrases, sentences, devices, designs, pictures, symbols or trade marks by which anything is made known, such as are used to designate a firm, an association, a corporation, a business, a service of a commodity or product, or any type of publicity, whether placed on natural objects or on a building, fence or other man-made structure, which are visible from any public street or public road right of way."